CASE 4—PETITION ORDINARY—OCTOBER 14.

# Owensboro & Nashville Ry. Co. v. Barclay's Administrator.

## APPEAL FROM LOGAN CIRCUIT COURT.

1. ENROLLED BILL.—An enrolled bill when properly attested by the presiding officers of the two Houses as required by law is conclusive, and the Legislative Journals are not competent evidence to show that it was not passed in conformity to the constitutional requirements.

2. PLEADING—PRACTICE IN CIVIL CASES—ISSUAL OF SUPERSEDEAS.— It is not a sufficient answer by the defendant to a suit against it by an administrator to allege that an appeal was taken from the order of the county court, appointing the plaintiff administrator, and that a supersedeas bond had been executed. The issual of the supersedeas was a necessary allegation under section 724 of the Civil Code.

3. CHANGE OF VENUE.—Under the provision of the act of April 9, 1880, that "the action of the court in refusing or granting such change of venue shall be final and without appeal," that question can not be reviewed by the Court of Appeals, even upon an appeal from the final judgment.

4. SAME.—The action of the trial court being at the time a motion for change of venue was acted upon not reviewable on appeal, it still can not be reviewed, although between that time and the time a motion for a new trial was acted upon there was a change in the law.

5. CONSTITUTIONAL LAW.—The provisions of section 241 of the Kentucky Constitution, which gives a right of action to a personal representative against any person by whose wrongful act the death of the intestate was caused, is not in violation of the fourteenth amendment to the Constitution of the United States, providing that no state shall make or enforce any law, depriving any person of property without due process of law, although the recovery may be for the benefit of persons who have no pecuniary interest in the life of the deceased.

6. CONSTITUTIONAL CONSTRUCTION.—Under section 241 of the Kentucky Constitution, damages other than compensatory damages were recoverable before the enactment of section 6 of the Kentucky Statutes.

7. MISJOINDER OF ACTIONS—ELECTION.—The plaintiff can not prop-

[2]

erly join an action for the death of his intestate by the negligence of the defendant, and also one for the physical and mental suffering of his intestate during the period between the accident and the death; but will be required to elect which cause of action he will prosecute.

WILBUR F. BROWDER FOR APPELLANT.

1. Upon the evidence introduced the change of venue should have been granted.

2. The petition alleged two separate and distinct causes of action, and the appellant's motion to require the plaintiff to elect which of them it would prosecute, should have been sustained. Conner's Adm'r v. Paul, 12 Bush, 144; Hansford v. Payne, 11 Bush, 380; Donahue v. Dexter, 82 Ky., 157; Hackett's Adm'r v. L., St. L. & T. Ry., 95 Ky., 236.

3. The election of a special judge of the county court, who appointed the administrator was held under an act which was not passed in the manner required by the Constitution, and the only law in existence at the time providing for a special judge of the county court. required that in the absence of the regular judge, the justice of the peace residing nearest the court house should act as special judge.

4. Where no actual pecuniary loss is entailed by the death of a person, the personal representative of such decedent can not recover, even though his death was the result of negligence of the defendant. Givens v. Ky. Cent. R. R. Co., 89 Ky., 231; Cincinnati, &c., Ry. Co. v. Privitt's Adm'r, 92 Ky., 223; Schoolcraft v. L. & N. Ry. Co., 92 Ky., 233; Wright, &c., v. Woods' Adm'r, 16 Ky. Law Rep., 337; Jordan v. C. & N. O. and T. P. R. R. Co., 89 Ky., 40.

If section 241 of the new Constitution is to be considered as changing this rule it would plainly be in conflict with the fifth article of the amendment to the Federal Constitution, which provides that no State shall make or enforce any law which abridges the privileges of any of the citizens of the United States, nor shall any State deprive any person of any privilege or property without due process of law.

5. The verdict of $15,000 was manifestly excessive under the circumstances of this case.

H. W. BRUCE OF COUNSEL ON SAME SIDE.

W. P. SANDIDGE FOR APPELLEE.

1. Under the express provisions of the amendment of April 9, 1880,

the action of court in refusing to grant the change of venue is not the subject of review by this court.

2. There was but one act of negligence although there were two elements of damage, both brought about by the one act of negligence. There being but one act of negligence he must sue for and recover in one action all that he expects to recover for that act. Should not a person who has been made to suffer for weeks and months recover more than one who is instantly killed without any element of suffering? All that was decided in the case of Conner's Adm'r v. Paul, 12 Bush, 144, or in the Hackett case, 95 Ky., 236, was simply that a separate action can not be maintained for each element of damage.

3. The act which provides for the election of a special judge in the county court was not void in itself and its provisions in no respect were repugnant to the Constitution; and even though it may not have been passed in the manner required by the Constitution, yet a special judge elected under its provisions was certainly a *de facto* officer and his acts should be binding on all courts. State v. Carroll, 9 Amer. Rep., 427.

4. The plea in abatement was defective, because it is not alleged that a supersedeas was issued and the proceedings in the county court stayed. Section 724, Civil Code.

5. The word "negligence" as used in section 241 of the Constitution is a generic term and includes both gross and ordinary, but not willful negligence. L. & N. Ry. Co. v. Mitchell, 10 Ky. Law Rep., 211.

6. The provisions of section 241 of the Constitution are not in conflict with the Federal Constitution; it has never been held in Kentucky or any other State that one must have a claim upon another for support before he can be said to sustain a pecuniary loss by reason of his death. Bush v. Cork Ry. Co. C. & J., 48; Ill Cen. Ry. Co. v. Barren, 5 Wall, 90; Given's Adm'r K. C. R. R. Co.. 11 Ky. Law Rep., 452; L. & N. Ry. Co. v. Morris, 14 Ky. Law Rep., 467.

EDWARD W. HINES ON SAME SIDE.

1. In the case of Conner's Adm'r v. Par , 12 Bush, considering the whole opinion, the meaning of the court seems to be that a single cause of action can not be divided and one element of the damage sued for in one action, and another element of damage sued for in another action, and this construction of that opinion seems to be borne out by the subsequent case of Donohue v. Drexler, in 82 Ky., 157.

2. It is well settled that all the instructions given by the court must

be. considered together, and when this is done in this case, it is manifest that instruction 5 does not amount to a peremptory. instruction.

3. Under the provisions of section 241. there may be a recovery for gross negligence. L. & N. Ry. Co. v. Kelly's Administratrix, 100 Ky., 421.

JOHN S. RHEA AND CRADDOCK & SANDIDGE OF COUNSEL ON SAME SIDE.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Hugh Barclay, Jr., was a fireman on the railroad of appellant, and had been so employed for some time previous to June 5, 1892. On that day a change of schedule went into effect at 7 o'clock p. m. By the old time card the regular train for Owensboro left Russellville at 7:25 a. m. By the new time card the starting time was made twenty minutes later. Barclay was acting as fireman on an excursion train from Owensboro to Bowling Green, by way of Russellville. The engineer and conductor of the excursion train, under whose orders Barclay was acting, misunderstood the time card, and, supposing it to have gone into effect at 7 a. m. of that day, instead of 7 p. m., failed to stop at the proper station to permit the regular train for Owensboro to pass, which failure resulted in a collision between the two trains, near South Carrollton   Barclay was frightfully mangled and scalded in the collision, and died about two hours afterward. Appellee qualified as Barclay's administrator, brought suit for damages against appellant, and recovered a verdict and judgment for $15,000, to reverse which this appeal is prosecuted.

The first question raised, in logical order, is the right of appellee to bring the suit, the point being made that the

bank, which 'was by law authorized to act as administrator,
was appointed by a special judge elected in pursuance of
the provisions of the act of May 11, 1892, and that that act
"was not adopted pursuant to the provisions of the Consti-
tution of Kentucky, and that it is for that reason, among
other reasons,. unconstitutional, null and void."     It was
made to appear from the journals of the House and Senate
that the act, upon its passage in the House, received the
votes of two-fifths of the members elected, a majority of the
members voting, and the vote being taken by yeas and nays
and entered in the journal, in accordance with section 46
of the Constitution.   It was amended in the Senate by the
insertion of a provision that the pay of the special judge
should not be taken out of the regular judge's salary, but
out of the county levy, and was passed by that body in ac-
cordance with section 46.   Upon the question of the House
concurring in the Senate amendment, the journal does not
show that the vote was taken by yeas and nays, nor does it
appear by what majority the amendment was concurred in,
nor was the vote entered in the journal; but it was enrolled
as amended, signed by the speaker, and signed and approved
by the Governor.   Without stopping to pass upon the suffi-
ciency of the pleading in which this objection is made, under
the rule laid down in Norman, Auditor v. Board of Managers,
14 Ky. Law Rep., 529, it is sufficient to say that, in Lafferty
v.  Huffman,   99   Ky.,   in   a   well-considered   opinion
by Judge Hazelrigg, it was held: * * * "That the enrolled
bill, when attested by the presiding officers as the law re-
quires, must be accepted by the courts as the very bill adopt-
ed by the Legislature, and that its mode of enactment was

in conformity to all constitutional requirements. When so authenticated it imports absolute verity and is unimpeachable by the journals."

A further objection urged to the right of appellee to prosecute the action is the averment in the answer that the father of Hugh Barclay, Jr., had, previous to the order appointing appellee administrator, applied to the county court to be appointed; that the same order which appointed appellee denied the father's application, and he thereupon took an appeal from the order, executed a supersedeas bond, and took all other necessary steps to bring up the judgment and proceeding of the county court to the circuit court for review and reversal, and that said appeal was then pending in the circuit court. This pleading, however, does not state that a supersedeas was ever issued. Unless a supersedeas was issued there was no stay of proceedings upon the judgment appealed from. Under the act of May 5, 1880, the circuit court has appellate jurisdiction of all orders or judgments of the county court granting, revoking or refusing letters of administration (Carroll's Code, page 379). By the act of May 15, 1886, the time and manner of taking such appeals is governed (Carroll's Code, 380) by the provisions of the Civil Code of Practice regulating appeals from said courts. Section 724 provides the manner of taking the appeal, and provides for the issuance of a supersedeas or order to the judge rendering the judgment to stay proceedings thereon. We regard the issuance of the supersedeas as a necessary averment.

It is urged as a reversible error that the trial court denied an application for a change of venue. It is unnecessary for

us to consider whether the trial court erred in deciding that appellant could obtain a fair and impartial trial in Logan county. The statute then in force (which was the act of April 9, 1880, amending General Statutes, chapter 12), provides: "The action of the court in refusing or granting such change of venue shall be final and without appeal."

It is insisted, however, that this provision is a mere delaration that no appeal could be taken from an order granting or refusing a change of venue, but that an erroneous decision of the question is, nevertheless, a reversible error after final judgment. But such an order would clearly not have been a final order, from which an appeal might be taken, had there been no such declaration in the statute; and the language used, "shall be final and without appeal," clearly indicates the legislative intent to be that such order should not afford ground for reversal. Moreover, by an act which went into effect five days after the order complained of, the Legislature dropped from the statute the language above quoted, and provided that the court "shall exercise a sound discretion in deciding the question," indicating the legislative construction to be in accordance with the view here given. And the Superior Court, in Howard, &c., v. Dietrich, 11 Ky. Law Rep., 235, considering this statute, which was then in force, held that the refusal of the court to grant a change of venue in a civil case can not be reviewed on appeal. It is earnestly urged, however, that the motion for a new trial, which was made after the new statute went into effect, at a subsequent term, gave the trial court an opportunity to correct the error which it is claimed was made in denying the change of venue. We should be slow,

however, to conclude that the Legislature, by the passage of the new act, intended to make a previous act of a court reversible error, which was not so when the action was taken.

It is further claimed that section 241 of the present Constitution, under which it is conceded the action was brought, is in violation of the provisions of the fifth amendment to the Constitution of the United States, providing that "no State shall make or enforce any act which shall abridge the privileges or immunities of any citizen of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law;" * * * that if this section of the Kentucky Constitution is construed as giving the right of recovery for death caused by negligence or wrongful act to any person who had not a legal pecuniary interest in the life of the deceased, it is in conflict with the Federal Constitution, as depriving the person by whose negligence the death was caused of his property by arbitrary fiat of the Constitutional Convention; that in this case the deceased, being a young man of nineteen, unmarried and childless, no person had any legal claim upon him, or any pecuniary interest in his life, except his father, and that only for the period to elapse before he attained his majority; and it is claimed that a construction of section 241 which allows any relative having no legal, pecuniary claim upon the deceased to recover damages for his death is a taking of private property from one person for the private use and benefit of another person, which can not be done by constitutional provision, general law or special enactment. But it has never been held, so far as we are informed, in any of the States

that a person must have a legal claim upon another for support in order to sustain a pecuniary loss by reason of the latter's death.    Under Lord Campbell's act, the original legislation under which damages were recoverable for death caused by negligence, it was provided that the action should be for the benefit of the wife, husband, parent, child, grandparent, step-parent, grandchild and step-child.    None of those enumerated in the Campbell act had a legal claim for support upon the decedent, except the widow, child or parent of an infant.

In the case of Ill. Cent. R. R. Co. v. Barren, 5 Wallace, 90, which was a case brought by the administrator of a person who left neither wife nor child, the Supreme Court said: "It has been suggested frequently in cases under these acts, for they are found in several of the States, and the suggestion is very much urged in this case, that the widow and the next of kin are not entitled to recover any damage unless it is shown that they had a legal claim on the deceased, if he had survived, for support.  *  *  * The only relation, mentioned in the statute, to the deceased essential to the maintenance of the action is that of widow or next of kin; to say they must have a legal claim on him for support would be an interpolation in the statute changing the fair import of its terms, and hence not warranted.    This construction, we believe, has been rejected by every court before which the question has been made."  *  *  *

' "If the person injured had survived and recovered, he would have added so much to his personal estate, which the law on his death, if intestate, would have passed to his wife and next of kin; in case of his death by the injury the equiv-

alent is given by a suit in the name of his personal repre-
sentative."

And in Bush v. Cork R. R. Co., C. & J., 48, it was said:
* * * "That damages for the death must be given in refer-
ence solely to pecuniary loss, which, however, may be evi-
denced by proof of a reasonable expectation of pecuniary
benefit, as of right or otherwise, from the continuance of
life."

Moreover, this court seems to have frequently held that
suits under section 1, chapter 57, General Statutes, might
be maintained by the personal representative, regardless of
whether there was a widow, child or other person having
a legal claim upon the decedent for support. (Givens v.
Ky. Cent. Ry. Co., 11 Ky. Law Rep., 452; L. & N. R. R. Co.
v. Morris, 14 Ky. Law Rep., 467.)

The question of whether section 241 of the Constitution,
before the enactment of section 6 of the Kentucky Statutes,
authorized the recovery of any other than compensatory dam-
ages was fully considered and decided in the affirmative in
L. & N. R. R. Co. v. Kelly's Admx. (100 Ky.)

But the petition averred not only the death of appellee's
intestate by the gross negligence of appellant, but alleged
specifically the physical and mental suffering of the intes-
tate during the period between the accident and the death.
Motions to require appellee to paragraph its petition and to
elect which cause of action it would prosecute were overruled
by the trial court. The instructions, moreover, authorized
the jury to find not only damages for the physical and men-
tal suffering of the intestate, but for the destruction of the
intestate's power to earn money. A most ingenious argu-

ment has been made by counsel for appellee to the effect
that there was no misjoinder of causes of action, but that
there was only one act of negligence, and that the cases upon
this subject go only to the extent of requiring the plaintiff
to recover in one action all that he is entitled
to recover for that act. But whatever may be the logic
of the question, and whatever might be our opinion were
the question now submitted to us for the first time, we
regard this question as so authoritatively and distinctly
settled in this State that the maxim of *stare decisis* should
be applied. At common law a cause of action existed for
damages for the physical and mental suffering of the intes-
tate between the time of his injury and his death; and by
section 1, chapter 10 of the General Statutes, this cause
of action survived to the personal representative. By the
Constitution, as well as by statutes in force prior to its
adoption (section 241), a cause of action is given to the per-
sonal representative for the damage to the estate of the
decedent caused by his death. In Hansford v. Payne, 11 Bush,
382, the death was caused by negligence in filling a physi-
cian's prescription with croton oil instead of linseed oil, and
suit was brought, alleging the suffering and agony, and also
the death, resulting from the negligence. It was held in
that case that the order dismissing the petition on the face
of the pleadings was error, as a cause of action was stated,
but the court said: "We do not anticipate that this ruling
will (as appellees' counsel fears) enable parties to sue under
the third section of the act of 1854 for the death, and also
under the provisions of chapter 10 for the damages accru-
ing anterior to the time of dissolution. A recovery of pun-

itive damages for the destruction of the life will certainly bar any other action for the injury or any of its consequences, and if a party elects to sue and enforce the right of action that survives to him he will not be allowed afterward to avail himself of the benefits of the punitive statute and also to recover under its provisions."

In Conner's Admr. v. Paul, 12 Bush, 144, the personal representative of Conner instituted one action for the recovery of damages for the mental and physical suffering of his intestate between the times of the injury and death, and also instituted another action for damages sustained by his death, caused by the same act. A motion was made to require him to elect which of the two he would prosecute, the motion was sustained by the circuit court and its judgment affirmed by this court. Said the court through Judge Pryor: "The party entitled to bring the action, either under the common law or under the statute, must make his election; and while the right of recovery under our statutes for willful negligence may increase the measure of the recovery, such an action is a bar to a cause of action that survived at the common law upon the same facts."

In Hackett's Admr. v. Lou., St. L. & Tex. R. R. Co., 95 Ky., 236, this court held: "Now this court has decided and settled the question that where certain acts cause death, they can not be divided so as to make two actions, one to recover for the suffering caused, and the other to recover for death. The party must elect."

In that case an amended petition averring the suffering which took place between the injury and the death was held to be a separate count, and the plaintiff was required to elect which cause of action he would prosecute.

And in the most recent case upon this subject, L. & N. R. R. Co. v. McElwain, 98 Ky., 700, the wife having been killed by the negligence of the railroad company, the personal representative, who was the husband, recovered a judgment for damages for her death, and instituted another action in his individual capacity for damages for the loss of her society from the date the injury was inflicted until her death. In that case, after a careful review of the authorities, the court, through Judge Paynter, said: "It was not the intention of the Legislature to multiply cases. The husband must accept the benefits which the statute secures to him in lieu of those he possessed at common law."

Without further elaboration or argument, we conclude the rule to be established that, in such cases, the party complaining is restricted to the common-law cause of action or the statutory cause, and must elect which one he will pursue.

This being our view, it is unnecessary to consider the errors alleged in the instructions given, which will certainly not be given upon a retrial.

For the reasons given the judgment is reversed and the cause remanded, with directions to award the appellant a new trial, and for further proceedings consistent with this opinion.