CASE 101—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S INTESTATE.—MARCH 5.

# Lewis' Admr. v. Taylor Coal Co. of Ky.

.112    845
135    744

APPEAL FROM OHIO CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

DEATH—PAIN AND SUFFERING—MISJOINDER OF CAUSES OF ACTION—FAILURE OF MASTER TO FURNISH GUARD TO PROTECT SERVANT—DEATH RESULTING FROM BREACH OF CONTRACT—SURVIVOR OF CAUSE OF ACTION.

Held: 1. A cause of action for death can not be properly joined with a cause of action for the pain and suffering of the decedent.

2. A misjoinder of two causes of action does not furnish ground of demurrer to the petition, the defendant's remedy being a motion to require plaintiff to elect.

3. The law imposes no obligation upon the master to furnish a guard to protect the servant from a mob of strikers.

4. Neither Const., section 241, nor Kentucky Statutes, section 6, giving a right of action for the death of a person resulting

from an injury inflicted "by negligence or wrongful act," author-
izes a recovery for the death of a servant resulting from the
master's breach of contract to furnish a guard to protect him
from an assault by others.

5. Under Kentucky Statutes, section 10, providing that no right of
action for personal injury shall cease or die with the person in-
juring or injured, "except actions for assault," and certain other
actions named, an action for the pain and suffering of a ser-
vant resulting from the master's breach of contract to furnish
a guard to protect him from an assault does not survive the
death of the servant.

W. H. YOST and GLENN & RINGO, for appellant.

(No brief for appellant.)

SWEENEY, ELLIS & SWEENEY, for appellee.

F. M. SACKETT, of counsel.

'This suit was brought by the administrator of decedent to re-
cover $15,000 in damages.

The lower court sustained a demurrer to the petition—plain-
tiff declined to plead further and his petition was dismissed, and
he appeals.

SYNOPSIS OF POINTS CONSIDERED AND AUTHORITIES.

1. Petition does not state a cause of action. O'Donoghue v.
Akin, 2 Duvall, 478; Davis v. Justice, 31 Ohio State, 359; Mo-
bile Life Insurance Co. v. Brame, 95 U. S., 580.

2. Action is sought to be maintained under Kentucky Statutes,
section 6. but that section has no application to cause of ac-
tion attempted to be stated. Chiles v. Drake, 2 Metcalfe, 750;
Cooley on Torts, sections 60, 559-560; O'Callaghan v. Cronan,
120 Mass., 114; Wharton on Negligence, section 24; American and
Eng. Ency. of Law, (1 ed.) vol. 16, p. 416; Cooley on Torts,
section 203; Bishop on Noncontractural Law, secs. 74, 75, 76;
Brown v. Chicago Railroad Co., 41 American Reports, 41; Amer-
ican and Eng. Ency. of Law, vol. 16, p. 416.

3. The negligence alleged in the petition is not a material al-
legation, since the suit is for breach of contract. Polluck on the
Law of Negligence, p.—

4. Contract sued on is against public policy. Oscanyan v.
Arms, 103 U. S., 261; 45 American Reports, 391; 13 American
St. Reports, 297; Starkie on Evidence, vol 2, p. 86; Mitchell v.
Vance, 6 T. B. Monroe, 528; Hardesty v. Taft, 87 American
Decisions, 554; Huchens v. Gibson, 1 Bush, 271.

5. The agreement relied on is *ultra vires*.  27 American and Eng. Ency. (1 ed.) 354, and note 1;  Beech on Modern Law of Contracts, secs. 980-983.

6. The contract sued on is void because it was the undertaking to answer for the misdoing of another.  Kentucky Statutes, sec. 470;  Beech on Modern Law of Contracts, sec. 1443;  American and Eng. Ency. (1 ed.) vol. 3, pp. 869-870.

7. The contract is void because it it without consideration and its fulfillment was a legal impossibility.  Beech on Modern Law of Contracts, sec. 505;  Brandt on Suretyship and Guaranty, secs. 6, 7.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

The appellee is a corporation engaged in the business of mining and selling coal.  The intestate, H. W. Lewis, was a coal miner.  While in the employ of the appellee he received injuries from the effects of which he died.  This action was brought to recover damages resulting from the injuries received.  Omitting formal parts, the petition reads as follows:  "(3) That in May, 1898, it had in its employment a large number of miners and mine laborers, all of whom were members of a secret organization called the 'Miners' Union,' and were on that account known and designated as 'union men,' in contradistinction to miners and mine laborers who were not members thereof, and who were designated 'nonunion men.'  About this time these union miners became dissatisfied with the management of the defendant's mines, or with the amount of wages they were being by it paid for their services, and left its employment on a strike; refusing not only to work themselves, but to permit others to work at, in, or about these mines, until their differences with the defendant corporation could be adjusted.  So openly and to such an extent did they show their determination that no one should be employed to fill their places in or about the mines, that they publicly and boldly threatened to take the life of any man

or men who should come there and attempt to do any
character of work for the defendant. These threats, and
the consequent danger to any nonunion men who should at-
tempt to work there for the defendant, were well known
to it, its superintendent and agents. Shortly after this
strike was inaugurated, the defendant attempted to, and
did, hire the services of a large number of nonunion men,
and brought them to its said mines, in order with them to
carry on its business; but these men were, with threats
of violence and force, frightened from their labor and driven
from the place. These facts were, as a matter of course,
well known to and by the defendant and its agents, as at
this time the locality of the mines was under the domina-
tion of the strikers, and men who attempted to work or la-
bor for the defendant were intimidated and awed into a
submission to their commands and behests. This soon
left the mines in a bad and dangerous condition, as the
rising of the waters therein, and their great need of being
pumped out and drained, was rendering them valueless
and unfit for use; and the defendant's officers and agents
fully realized that the property would soon be ruined and
become a dead loss to its owners unless hands could be
procured who would do the work so badly and seriously
needed there. (4) That an agent and officer of the defendant
company fully authorized to act and make contracts for it
then approached the plaintiff's intestate, the said H. W.
Lewis, then a resident of the county of Jefferson, in this
State, and without warning him of the trouble of the mines,
of the strikes of the miners, of their threats against any-
one who would come there to work, of the consequent dan-
ger to him which the defendant well knew, employed him to
go to the mines and work for it, promising and agreeing to
give him employment for the space of one year. Accepting

this employment at the compensation then and there agreed upon, and wholly ignorant of any danger or dangers incident to the work, or on account of the strikers and their threats, his said intestate went to the mines and began work. After a few days, during which time he had been superintending a number of men who were draining the mine, he was warned by a committee of the strikers that they would not allow him to work for the defendant. These facts and the language and the threats of the said committee his intestate at once communicated to the defendant's superintendent and chief officer, then at the mines, and asked him what he must do. It was well known to the defendant, its officers and agents, that, if this work was stopped then, the mines would become flooded, dangerous and unfit for use, and be thus made utterly worthless; and thusknowing, and realizing the absolute necessity for the continuation of this work, the defendant corporation, by and through its said superintendent and chief officer, then and there promised, agreed and undertook, in consideration of said Lewis continuingthe work under the circumstances as herein above alleged, that the said company would hire a sufficient guard or force of men to protect the said Lewis and all the men working under him from any danger or trouble from the strikers; and thereupon said Lewis, relying solely and wholly upon the defendant's promise to protect him, proceeded again to work, and finished his day's labor. The defendant, however, willfully, negligently and wantonly failed and refused to perform its said undertaking, in this: that it did not hire a guard or any number of men to protect the said Lewis, nor did it, through any of its officers or agents, make any attempt to secure the services of a guard, or in any way to protect him from the dangers which it well

knew environed him, and from which, in consideration of his work to save its property from ruin, it had solemnly agreed and undertook to hold him harmless. (5) He now alleges that after the said Lewis had finished his labor for the day, and had gone to his home, a number of the strikers, con-sisting of about ——— men, went to the house where he was staying, dragged him therefrom by force, and willfully, unlawfully and without right or reason, beat him on the head with stones, clubs and loaded sticks, by reason of which beating he was permanently disabled and injured, and was confined to his bed for ——— months, suffering all the time great bodily pain and mental anguish, and afterwards died by reason of the wounds then and there so by him received, and all of which these strikers were enabled and encouraged to do on account of the defendant's failure to furnish the guard and protect the said Lewis, which, well knowing the urgent and crying need therefor, it willfully, wantonly and negligently failed and refused to do. (6) That his said in-testate was so assaulted, beat, injured and murdered by, these rioters at the defendant's mines, on its property, and although it had due notice of the riot immediately on its breaking out, and although it had promised and agreed to protect the said Lewis, it failed to protect or to make any attempt to protect him, to his damage in the sum of fifteen thousand dollars, all of which occurred on the 31st day of May, 1898, and within twelve months next preceding the filing of this petition."

At common law, although the death of a person was caused by negligence or wrongful act, no cause of action survived. Under section 6, Kentucky Statutes, where death results from negligence or wrongful act, the cause of action survives to the personal representative. The section reads as follows: "Whenever the death of a person shall result

from an injury inflicted by negligence or wrongful act, then in every such case damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, their agents or servants, causing the same, and when the act is willful or the negligence is gross, punitive damages may be recovered and the action to recover such damages shall be prosecuted by the personal representative of the deceased." Section 241 of the Constitution provides that there may be a recovery where death resulted from negligence or wrongful act. At common law, the right of action for the injury to the person abated on the death of the party injured. Under Kentucky Statutes, section 10, the cause of action for personal injury, causing physical and mental suffering, does not abate on the death of the injured person, except actions for assault, slander and criminal conversation, and so much of the action for criminal prosecution as is intended to recover for personal injury. These questions are reviewed by this court in Railroad Co. v. McElwain, 98 Ky., 700 (18 R., 379), 34 S. W., 236, 34 L. R. A., 788, 56 Am. St. Rep., 385. So, under the principles of the common law, if appellee had, through its agent, inflicted the injury which resulted in physical pain and mental suffering and death, neither cause of action would have survived. This court has held that the cause of action for damages resulting in death can not be joined with the cause of action for physical pain and mental suffering; that a recovery for one bars an action for the other. Hackett v. Railroad Co., 95 Ky., 236 (15 R., 612) 24 S. W., 871; Railway v. Barclay's Adm'r, 102 Ky., 16 (19 R., 997) (43 S. W., 177; Railroad Co. v. McElwain, supra; Hanford's Adm'x v. Payne, 11 Bush, 385; Conner's Adm'x v. Paul, 12 Bush, 145. No motion was made to compel the plaintiff to elect which cause of action he would prosecute. A demurrer was filed

to the petition and sustained. 'As there was no motion to elect, the question was whether the petition states a cause of action is here for review.

The law imposes on carriers the highest degree of care in the transportation of their passengers. The law not only makes them liable for neglect in the operation of their road, if a railroad, but makes them liable for the neglect of any duty imposed on them resulting in the injury of a passenger. If those in charge of a train knowingly permit a person to remain upon it who from his conduct renders it probable that the passengers may be injured by him, and one is so injured, then the carrier is liable, because the law imposes the duty of exercising the highest degree of care in his transportation; and it would be gross negligence to endanger the life or limb of passengers by carrying a person of the character described. So the duties of the carrier are such that it might be made responsible for the criminal conduct of some one who is entirely disconnected with its service. The law imposes the duty upon the master to furnish his servant with reasonably safe tools or machinery to use or operate, and reasonably safe premises upon which to work. A violation of this duty, when the servant is ignorant of the master's neglect, or, being aware of it, a reasonably prudent man would continue to work under like conditions, the master is responsible for the injury which he receives in consequence of such neglect. The master, whether he be a common carrier or engaged in another enterprise, does not undertake to protect the servant from the criminal acts of others. This is not a duty which the law imposes, or which arises from the relation of master and servant. The law does not make one liable civilly or criminally for the criminal act of another unless the position of the parties are such relatively that the act must be con-

sidered as having been, in contemplation of law, advised or procured to be done by another. Actionable negligence arises from a duty imposed by law to use ordinary care under the conditions in which a person upon whom a duty rests is placed. For a failure to perform that, a cause of action exists. The negligence may have resulted independent of a contract, or a contract may exist which does not contain a promise that the one is to use ordinary care to avoid injury to one who is to perform a service in the execution of the contract. In the latter case actionable negligence results from a condition, rather than a violation of the provisions of a contract.

With these general observations, we come to the consideration of sections 6 and 10 of the Kentucky Statutes. The word "negligence" is used in section 6 in its usual and ordinary sense. It was intended to make one liable for his own negligent act, or for that of another for whose act he is responsible. The words "wrongful act" are comprehensive enough to include negligent acts, but they were intended primarily to cover cases where the act was wanton or was intentionally committed, or where one may have counseled or procured another to do it, when, in contemplation of law, the act of counseling or advising makes the wrongful act his own. It is not charged that under the law of master and servant (nor could it have been correctly done) the appellee was bound to furnish a guard to protect the decedent from the hands of a mob. Therefore there was no breach of duty imposed by law which would make it guilty of negligence. It is not charged that the appellee inflicted the injury upon decedent, or counseled, advised or procured others to do it. Therefore it is not charged, nor could it have been, that the appellee was guilty of the wrongful act which resulted in the injury and death. By

the way, it may be added that in McClure v. Alexander (15 R., 732) 24 S. W., 619, it was held that the section of the statute where the right of action is given the widow and minor children of a person killed by the careless, wanton or malicious use of firearms, etc., is not repealed by section 241 of the Constitution. Having reached the foregoing conclusion, it follows that an action for the death of the intestate will not lie under section 241 of the Constitution, or section 6 of the Kentucky Statutes. If appellee had been liable at common law for the assault and battery committed upon the person of the intestate, the cause of action would not have survived to the personal representative, because the act complained of was an assault, and an action therefor does not survive to the personal representative; for section 10 of the Kentucky Statutes reads as follows: "No right of action for personal injury or injury to real or personal estate shall cease or die with the person injuring or injured, except actions of assault, slander, criminal conversation, and such of the action for malicious prosecution as is intended to recover for the personal injury; but for any injury other than those excepted, an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract." This court has held in Anderson v. Arnold's Ex'r, 79 Ky., 370 (2 R., 364), that an action for an assault and battery does not survive. Of course, the court did not mean to hold that, when death has resulted from an assault, any cause of action which was given under the statute for the death would not survive; neither do we want to be understood as holding a cause of action given for the death of a person, either by section 241 of the Constitution, or any section of the statutes, is affected by section 10, although the death

was the result of an assault. We simply hold that the cause of action for the assault and battery does not survive. The action is really one in contract. The contract averred can not bring the case within the provisions of section 241 of the Constitution and section 6 of the statute; nor can it have the effect of keeping alive a cause of action, if it existed, which section 10 of the statutes declares does not survive. There is another reason, and may be more, why the contract can not be enforced, but we deem it unnecessary to consider it.

The judgment is affirmed.