# Louisville & Nashville Railroad Company v. Strange's Administratrix.

(Decided December 16, 1913).

## Appeal from Logan Circuit Court.

1. **Pleading—Alternative Allegation Under State and Federal Law —Election—Necessity For—Error.**—Where in an action by an administratrix against a railroad for damages for the death of her decedent, plaintiff alleges that at the time of decedent's injuries he was engaged in the service of the defendant as brakeman on a train then used and operated in interstate commerce or intrastate commerce, and that one of these two states of facts was true, but which was true she did not know and could not state, it is error, on motion of the defendant, to refuse to require plaintiff to elect whether she will proceed under the state law or the Federal Employers' Liability Act.

2. **Master and Servant—Action for Death—Negligence—Evidence —Sufficiency.**—In an action against a railroad company by the administratrix of an employee to recover damages for the latter's death, alleged to have been due to an unusual and unnecessary jerk of the train, evidence of the character of the jerk examined and held sufficient to take the case to the jury.

3. **Interstate Commerce—Federal Employers' Liability Act—State Law—Applicability—Test.**—In determining whether or not the Federal or State law is applicable in an action for damages against a railroad company for the death of an employee, the test is, were the injuries of the employee sustained while the company was engaged and the employee was employed in interstate commerce? If so, the Federal statute applies; if not, the state law is applicable.

4. **Interstate Commerce—Federal Employers' Liability Act—State Law—When Applicable.**—Where cars are brought from one state to another without orders to carry them farther than to the point of their destination, their interstate journey terminates on their arrival, and if after their arrival new orders are issued to distrbute them and other cars to points within the state of their destination, the carrier, in handling the new train, is not engaged in interstate commerce, nor is an employee on that train employed in interstate commerce, and where an employee on such train is injured or killed, the right of action arises under the State law and not the Federal statute.

5. **Evidence—Res Gestae.**—Statements of the decedent that he was jerked from the train, made within two minutes after his injuries were inflicted, are competent as a part of the res gestae.

6. **Master and Servant—Action for Death of Employee—Gross Negligence—Proof Not Necessary.**—Where a brakeman is in-

jured by the negligence of the engineer, and death ensues, it is not necessary to show gross negligence, but a recovery may be had for ordinary negligence.

BENJAMIN D. WARFIELD, BROWDER & BROWDER, and C. H. MOORMAN for appellant.

S. R. CREWDSON, B. F. PROCTOR and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On November 22, 1911, Claude Strange, an employee of the Louisville & Nashville Railroad Company, was killed. His administratrix brought this action against the railroad company to recover damages for his death. From a verdict and judgment in her favor for the sum of $15,000, the railroad company appeals.

The accident happened about 5:40 on the morning of November 22, 1911. The decedent was a flagman or rear brakeman on a freight train consisting of an engine, a caboose and 19 empty coal cars. These cars were all destined to certain coal mines situated in the State of Kentucky on the O. & N. Division of the defendant's line of railway. The train was to begin its journey at Russellville and terminate its journey at Central City. None of the cars were destined for points outside of the State. At the time of the accident the train had been made up and was headed north. All that remained to be done was for the conductor and engineer to register out. Before starting, the train was several yards south of the register office. It then began to move slowly towards the office with a view of stopping there in order to enable the conductor and engineer to register out. The caboose was a box car, or ordinary freight car, temporarily equipped as a caboose. It had doors in its sides instead of in the rear and front. On the side near the center of the car was a step and hand rail. When last seen decedent was on the side step on the left hand side. When the engineer reached a point near the register office, the speed of the train was reduced. The conductor left the train and went into the register room. About a minute later he was joined by the engineer.

The evidence for plaintiff is in substance as follows:

Hal King, who had worked as a brakeman for the Louisville & Nashville Railroad Company for about two

years and a half, and for the Illinois Central Railroad Company about two months, and who on the occasion of the accident was employed by the defendant, says that he was at a point in the yard about 90 yards from where decedent was killed. Decedent was standing on the side of the caboose as it passed him. The train was then going about four miles an hour. He heard a jerk of the cars and then heard some one halloa. He ran to the point of the accident and found decedent with both legs cut off and his face scarred up. Decedent was lying by the side of the track. The car had pulled over him. This was not over two minutes after the decedent was hurt. He asked decedent how he got hurt, and decedent said he "was jerked off." Decedent was hurt on the Hopkinsville crossing, and the caboose was about two car-lengths north of that crossing. It was about fourteen car-lengths from the Hopkinsville crossing to the Memphis line crossing. There is a down grade from the Hopkinsville crossing to the Memphis line crossing. The jerk that he heard was a hard jerk. "From the sound of these cars it was a very hard jerk." It was not a usual or customary jerk; "from the sound of the cars it must have been harder" than the customary jerk. He further stated that brakemen know when a train stops and starts that there is going to be some jerk. He himself had been jerked some. Never made a trip without some jerking. Didn't know that he had ever heard one harder than that.

Phil Wilson, a section foreman employed by the defendant when decedent was killed, testified that he was down at the shops on the day of the accident. He testified that he heard the train when it moved down. It gave a hard jerk. In a few minutes he heard that a man was killed. Witness had been working around railroads all of his life, and was familiar with the noise of trains. On being asked whether the jerk of the train was a customary one or not, he answered: "It was harder than usual." He testified that the noise of the jerk came from about the Hopkinsville crossing.

H. L. Ryan, the conductor in charge of the train, testified that he told decedent that the train would pull down to the office and get orders, and directed the decedent to couple the air to the caboose. He then rode the train to a point near the office. On leaving the train he went into the office. The train was then flagged across the Memphis line. The train pulled over the crossing while he was in the office. Shortly thereafter

the engineer came into the office. Pretty soon a man came in and said Strange was hurt. When they got to the point where Strange was hurt he was on a cot. He only heard one jerk of the train. Witness' testimony as to the character of the jerk is as follows:

"Q. What character of jerk was that?"

"A. It was a tolerably hard jerk, but I have heard lots harder and some not so hard, but it was a jerk that is liable to occur on any freight train."

"Q. Hard enough to jerk a man off?"

"A. Very often the case unless a man is holding on. When a man is not expecting a jerk sometimes a very small jerk will jerk him off."

When decedent reached the office he said: "Cap, they jerked me off."

Vernon Gorham testified that he had been in defendant's employ for four and a half years. On the necessity of the jerk he testified as follows:

"Q. In your judgment would you regard it careful and prudent railroading for the engineer to move his engine down there at the rate of four or five miles an hour, and reduce the speed of his train as if he was going to stop and apply the steam and start suddenly and jerk it," (Objected to.)

"A. No, sir."

"Q. Would there be danger in managing the train in that way?"

"A. In the first place he is liable to hit another train on the crossing, somebody else might try the same thing, and he is liable to jerk the train in two; or to jerk someone off like it did happen." (Objected to.)

"Q. In stopping and starting freight trains is there any way possible for the engineer to avoid the running in and running out of the slack of the train?"

"A. Of course, he cannot avoid the slack running up in the train, but when he goes to stop he can stop easy."

"Q. He can reduce that jerk, but he cannot eliminate it entirely?"

"A. No, sir."

"Q. It is common in the operation of freight trains, more or less jerking?"

"A. Yes, sir."

"Q. It can't be avoided, can it?"

"A. No, sir, can't avoid some jerking."

It further develops from the evidence of the engineer that when he got near the office the conductor jumped off and went to the office. He then passed the office and got a signal to go ahead. He gave the engine steam and started across the crossing. He never felt any jerk at all. A man on the engine cannot feel a jerk as well as a man on the rear end. He opened up the throttle gradually. As he approached the Memphis line crossing the slack ran in. When he struck the grade and opened up his engine the slack ran out. That caused the jerk. He did not open up his throttle violently or unusually. Every movement of the train was controlled by him. He shut the throttle off himself. There was no necessity for an unusual jerk.

Jesse Ramsey, head brakeman, testified that he signaled the engineer across the Memphis line. He did this in response to a signal from the rear brakeman. In going across there was no necessity for a hard jerk, though it was impossible to start a freight train without a snatch. Norman Wyatt, the fireman, testified that the train had almost stopped when the signal to go over the Memphis line crossing was received. The engineer opened up his throttle and moved over the crossing. From what the engineer said, it was his understanding to let the engine roll to a certain point. When he reached the throttle it was not entirely shut off. He pushed the throttle and shut it off.

(1) It is insisted that the court erred in refusing to require plaintiff to elect whether she would proceed under the State law or the Federal Employers' Liability Act.

In her petition plaintiff made the following allegation:

"She says further that at the time of the injury aforesaid her said intestate was in the service of the defendant as brakeman upon its said train, which was then being used and operated on one of its highways of interstate commerce, and that said cars and trains was then being used in interstate commerce, or was being used in intrastate commerce and that one of the two states of facts is true and she does not know and cannot state which is true, and that her said intestate was killed while so engaged, as the direct result of one or more of all of said acts of negligence combined, and without fault on his part."

Before proceeding into trial defendant made a motion to require plaintiff to elect whether she would pro-

ceed under the State law or the Federal Employers' Liability Act. This motion was overruled. Thereupon plaintiff's evidence was heard. Plaintiff was permitted to prove the number, ages and sex of her children, and to show that her husband was a man of good moral character. At the conclusion of plaintiff's evidence the motion to elect was again overruled. Thereupon defendant's evidence was heard. At the conclusion of all the evidence the court held that the case was controlled by the State law, and directed the jury in arriving at their verdict not to take into consideration any of the evidence in regard to the number, ages and sex of the decedent's children, or in regard to his moral character. The court then instructed the jury and submitted the case under the State law.

Counsel for plaintiff contend that the method of pleading adopted in their petition is authorized by subsection 4 of section 113 of the Civil Code of Practice, which provides "but a party may allege, alternatively, the existence of one or another fact, if he state that one of them is true, and that he does not know which of them is true." The case, however, is not one of mere alternative pleading of facts, for the sole purpose of pleading the facts in the alternative was to invoke the application of both the State law and the Federal statute. It is well settled that where the carrier is engaged in interstate commence and the employee is injured while employed in interstate commerce the Federal statute supersedes all State laws and covers the entire field. Mondou v. New York, New Haven & Hartford R. R. Co., 223, U. S., 1, 53-55; Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U. S., 570, 576; Michigan Central R. R. Co. v. Vreeland, 227 U. S., 59, 67.

Were the parties themselves and the rights and liabilities of the parties precisely the same under both the State law and the Federal statute, there would doubtless be no good reason for requiring an election; but such is not the case. Among the points of dissimilarity may be mentioned the following:

(1) Under the Federal statute the action is vested in the decedent's personal representative for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none then of the next kin dependent upon such employee; while in a case arising under the State

law the right of action is vested in the personal representative for the benefit of the decedent's estate.

(2) Under the Federal statute the fellow servant rule is abolished. Under the State law it is still in force, subject to certain modifications which need not be noticed.

(3) Under the Federal statute the employee does not assume the risk of his employment in cases where the violation by the carrier of any statute enacted for the safety of the employee contributes to the death or injury of said employee. Under the State law the doctrine of assumed risk applies and is subject to no such modification.

(4) Under the Federal statute the action must be brought within two years from the day the cause of action accrued. Under the State law the action must be brought within one year from the day the cause of action accrued.

(5) Under the Federal statute contributory negligence does not bar a recovery, but the damages are diminished by the jury in proportion to the amount of negligence attributable to such employee. Furthermore, an employee is never guilty of contributory negligence in cases where the violation by the carrier of any statute enacted for the safety of the employee contributed to the death or injury of such employee. Under the State law contributory negligence bars a recovery.

These points of dissimilarity make it plain not only that the parties and their rights and liabilities are essentially different under the two laws, but that in many cases there will be a material difference in the pleadings and the character of the evidence that may be heard. With such essential differences between the two laws we are unable to perceive how a party may properly proceed under both at the same time. In cases of negligence causing death we have held in a number of instances that the cause of action which survives for the physical pain and mental anguish suffered during the period between the accident and death cannot be joined with the cause of action given by the Constitution and the statute for the loss resulting to the decedent's estate for the destruction of his earning capacity, and that the party complaining is restricted to the common law cause of action or the statutory cause, and must elect which one he will pursue. Connor v. Paul, 12 Bush, 145; Hansford v. Payne, 11 Bush, 385; Hackett v. Railroad Co., 95 Ky., 236, 24 S. W., 871; L. & N. R. Co. v. McEl-

wain, 98 Ky., 700, 34 S. W., 236, 34 L. R. A., 788; Thomas v. Maysville Gas Co., 21 Ky. L. R., 1690, 56 S. W., 153; Barclay v. O. & N. R. Co., 102 Ky., 16, 43 S. W., 177; Louisville Ry. Co. v. Will, 23 Ky. L. Rep., 1961, 66 S. W., 628; Lewis v. Taylor Coal Co., 112 Ky., 845; 66 S. W., 1044. Indeed, the precise question here under consideration was before this court in the case of South Covington & Cincinnati Street Ry. Co. v. Finan's Admx., 153 Ky., 340. There plaintiff's cause of action was stated in three separate paragraphs. In the first paragraph plaintiff based her right of recovery on the common law. In the second paragraph she pleaded that the defendant was engaged in interstate commerce and her decedent was injured while employed in interstate commerce, thus invoking the aid of the Federal Employers' Liability Act. In the third paragraph she rested her case on the statute of the State of Ohio. Before answer defendant moved the court to require plaintiff to elect which cause of action she would prosecute. This motion was overruled. It was held that the circuit court erred in refusing to require plaintiff to elect under which paragraph of the petition she would prosecute her case. While the precise question involved has not been passed on by the Supreme Court of the United States, its rulings on other questions of a similar character tend, we think, to sustain the views herein announced. The decisions of that court make it reasonably plain that there can be no such thing as an alternative right of action under the Federal or State law; for both cannot occupy the same field, and if the Federal statute is applicable the State law is excluded by reason of the supremacy of the former under our National Constitution. Thus in the case of St. Louis, San Francisco & Texas Ry. Co. v. Seale, 229 U. S., 156, plaintiffs' petition stated a case under the State law. The defendant, by its special exceptions, called attention to the Federal statute and suggested that the State statute did not apply. Plaintiffs, with the sanction of the court, stood by their petition. It developed from the evidence that the real case was controlled not by the State statute, but by the Federal statute. It was held that the case proved was not pleaded, and that plaintiffs' were not entitled to recover. In the case of St. Louis, Iron Mountain & Southern Ry. Co. v. Hesterly, Admr., 228 U. S., 702, it was held that defendant was not estopped to rely on the Federal statute by a plea of contributory negligence under the State law on the ground that the

right of election was in the plaintiff and as he relied on the State law defendant had no choice if it was to defend on facts.

In the case under consideration the motion to elect was made in due time. Defendant had the right to know in advance under which law it would be required to defend. The trial court, therefore, erred in overruling defendant's motion.

Another error relied on is the failure of the trial court to give a peremptory in favor of defendant. In this connection it is insisted that the evidence fails to show that the jerk which resulted in decedent's death was anything more than an ordinary or usual jerk. It is the rule that brakemen on a train assume the risks and hazards arising from such jerks as are usually and ordinarily incident to the prudent operation of the train, and if injured or killed as a result of such a jerk there can be no recovery; but if killed or injured as the result of a jerk which was unusual and unnecessary, and so violent as to show a want of ordinary care on the part of those operating the train, then a recovery may be had. Central Kentucky Traction Co. v. Smedley, 150 Ky., 598. As no precise rule can be laid down for determining the amount and character of evidence sufficient to justify a recovery, each case will have to turn on its own peculiar facts. In the present case there was evidence that the decedent was jerked from the train so violently that he rolled under one of the cars and was killed. There is evidence to the effect that the jerk was a very hard one, and harder than usual. Even the conductor, who heard the jerk while in the register office, says that it was a tolerably hard jerk, though he had heard jerks harder than that. One of the witnesses who was a railroad man of several years' experience says that he didn't know that he had ever heard a harder jerk. Another witness says that the prudent operation of the train did not require a jerk of that character at that time. Indeed the engineer himself says that there was no necessity for an unusual jerk at the time he opened the throttle and started across the Memphis branch road. Taking into consideration the fact that there was evidence tending to show that the prudent operation of the train did not require a jerk of an unusual character, and that the jerk was not only a very hard one, but unusual and sufficiently violent to throw the decedent from the car and to cause him to roll under

the train, it is apparent that the evidence here is much stronger than that in the case of L. & N. R. R. Co. v. Greenwell's Admr., 144 Ky., 796, and the cases therein cited, and, in our opinion, was sufficient to justify the submission of the case to the jury. I. C. R. R. Co. v. Hansbrough's Admr., 151 Ky., 804; L. & A. R. Co. v. Phillips' Admr., 151 Ky., 445.

In determining whether or not the Federal or State law is applicable to an action of this character the test is this: Were the injuries of the employee sustained while the company was engaged and the employee was employed in interstate commerce? If so, the Federal statute applies; if not, the State law is applicable. St. Louis, San Francisco & Texas Ry. Co. v. Seale, *supra;* Second Employers' Liability Cases, 223 U. S., 1, 53; Pederson v. Delaware, Lackawanna & Western R. R. Co., 227 U. S., 146.

What are the facts of this case? The train on which decedent was working consisted of 19 cars. The majority of those cars were brought from points in Kentucky to Russellville. A few of the cars were brought from points in Tennessee. The conductor was directed to bring all of the cars to Russellville. No one had orders to carry the cars any farther. When the cars coming from Tennessee reached Russellville it was the end of their interstate journey. After reaching their destination new orders were issued with reference to their destination. Under these new orders and on their new journey each car in the train was destined to a point within the State of Kentucky. It is apparent, therefore, that the carrier was not engaged, nor was the decedent employed, in interstate commerce at the time of the injuries resulting in his death. It follows, therefore, that the trial court properly held that the case was one arising under the state law, and not under the Federal statute.

The statements of the decedent to the effect that he was jerked from the train were made within two minutes after his injuries were received, and were, therefore, admissible as a part of the *res gestae.* C., N. O. & T. P. Ry. Co. v. Evans. 129 Ky., 152.

The instructions given by the trial court are not subject to complaint. They are substantially the same as those directed to be given in the case of C., N. O. & T. P. Ry. Co. v. Evans, 129 Ky., 152. Indeed, this is conceded by counsel for defendant, but it is insisted that they should not have been given because the evidence

was insufficient to take the case to the jury, a contention which we have heretofore considered and decided adversely to defendant.

Being a death case, it was not necessary for plaintiff to show or for the court to require the jury to believe that the negligence of those in charge of the engine was gross. In such a case a recovery may be had for ordinary negligence. C. N. O. & T. P. Ry. Co. v. Cook, 23 Ky. L. Rep., 2410, 67 S. W., 383; I. C. R. R. Co. v. Coleman, 22 Ky. Law Rep., 876, 59 S. W., 13; Linck v. L. & N. R. R. Co., 21 Ky. L. Rep., 1097, 54 S. W., 184; Clarke v. L. & N. R. R. Co., 101 Ky., 34, 39 S. W., 840; L. & N. R. R. Co. v. Brown, 32 Ky. L. Rep., 552, 106 S. W., 795.

Judgment reversed and cause remanded for new trial consistent with this opinion.

Whole court sitting, Judge Nunn dissenting.

DISSENTING OPINION BY JUDGE NUNN.

In deciding to reverse this case the other members of the court have reached the conclusion that section 113 of the Code permitting alternative pleading is not applicable. My view of this matter is so very different that I feel constrained to dissent from their opinion. The effect of this ruling of the court, in my judgment, will lead to endless confusion, if not disaster, to many deserving litigants, and the facts here bring forcibly to mind this danger.

It was an interstate train until it reached Russellville, and there a train order from the dispatcher was handed to the conductor and engineer in charge. By virtue of this order the train, consisting of the same cars, engine and crew, on the same road-bed which was an interstate highway, became an intrastate train. The delivery of the train order, and the accident occurred at the same station, and practically at the same time. It was a telegraphic order, and from its very nature a secret one. Only the railroad company and its officers in charge of the train knew, or could know, of this order that worked such a sudden transition in the character of the train.

It has been adjudged that it is not difficult to determine whether the business of the carrier is intrastate or interstate commerce. Conceding the accuracy of that judgment, it certainly assumes a full knowledge of all the facts, and no judge of discretion would undertake to decide the question until all the proof be in. In advance

of the trial, and in a great number of cases, none but the railroad company could or did know what character of commerce the train is engaged in. If one does not know all the facts, there is at least an even chance that he will make the fatal mistake of basing his action upon facts within the purview of the Federal law, only to discover, after perhaps a year's litigation, that the state law alone is applicable—a non-suit results, and a plea of limitation interposed as a bar to any further effort to recovery.

While subsection 4 of section 113 of the Civil Code was enacted long before the Federal Employers' Liability Act, and not in contemplation of it, yet its purpose was to meet just such conditions, and it has served that purpose for a great many years. I can see no good reason for taking it out of service now. Trains of common carriers are engaged in interstate, or intrastate commerce, one or the other, and an essential fact for recovery in actions of this nature is what kind of commerce the train was engaged in; for, as correctly stated in the opinion of the court, if interstate commerce the Federal law only applies, and the state law alone is applicable if it is intrastate commerce. That fact, that is, the kind of commerce in which it is engaged, like many other facts in all forms of actions, is peculiarly within the knowledge of the adverse party. Even under the common law, and independent of our Code, where the facts to be alleged are peculiarly known, or presumed to be known, to the opposite party, less certainty and particularity are required of the pleader than in ordinary cases. (6 Ency. Pld. & Pr., 271.) But the Code of Practice, by the section referred to, goes farther than this, and specifically confers upon claimants the right to plead alternatively that the one or the other fact is true, if he does not know which. The reason for this rule of the Code is the same upon which the above named practice at common law is founded. The adverse party knows which fact is true, and no right of his is prejudiced by the Code provision permitting the alternative statement. And knowing which fact is true, he should disclose it, and not seek to make the other party elect. Analogous is the requirement upon defendant when he seeks to have return of summons quashed because of mistake in the name of party defendant, or upon his special demurrer for defect of parties, he is required to disclose the real name of the defendant, or parties in interest.

To me the Code provision is too plain for misunderstanding. A party may—not in some cases merely, nor except in the case of a railroad company, but may in all cases, against any party allege alternatively the existence of one or the other fact, if he state that he does not know which of them is true. The plaintiff did exactly that in this case, and nothing more. The Code permits it, and that ought to be sufficient. She does not plead a legal conclusion, or say that this *law* or that is applica· ble, but she pleads alternatively the *fact* that the train was either engaged in interstate or intrastate commerce, and she does not know which. It is no answer to say that her purpose was to invoke the application of *both* the State and Federal statutes. Both were enacted for the benefit of litigants, and she had a right to invoke the aid of *either* if the facts should come within the purview of their provisions. She was not claiming under both laws, but under that law which one fact would make applicable to her case, and that one fact she did not, and could not, know, but which was within the knowledge of the railroad company.

Neither can it be said that there was a misjoinder, or that she was attempting to join two causes of action.' She had but the one grievance, and a single cause of action against one party for the same negligent acts. If the negligent acts be proven the defendant is liable under either the State or Federal law.

Neither should her right to plead alternatively be denied by saying that under the two laws there is a difference in the parties for whose benefit a recovery may be had, or that the rights and liabilities of the litigants are different, and for that reason there would be confusion in pleadings, and in the introduction of evidence. There would be more force in this argument if we were permitted to repeal the Code provision. Since that is out of our province, and, as I view it, the Code plainly authorizes it, an objection to the Code, for the confusion arising from it should be addressed to the legislature, which alone has power to repeal or modify it. Moreover, the defendant can save itself and the court from any possible confusion by disclosing the facts bearing upon the question. The only difference in proof required under the two laws is the matter of heirs at law of decedent, and their dependency. The court by hearing proof upon this point at the close of the testimony may preserve every right of both parties without any possible detriment to either.

It is true the U. S. Supreme Court in the case of St. L., S. F. & T. Ry. Co. v. Seale, 229 U. S., 156, has held that there can be no alternative right of action under the State or Federal law because the Federal law supersedes the State law if the injury arises from interstate commerce. For that reason the party cannot choose at his pleasure under which law he will proceed since the facts must choose, or determine for him. But it is one thing to plead and rely alternatively on the *State and Federal statutes,* and quite another thing to plead alternatively the existence of *one or another fact* when he is entitled to recover if either fact exists.

Moreover, I fail to see in what way the appellant was prejudiced by the court's failure to require an election. In view of the fact that the train causing the death was engaged in intrastate commerce, the only superfluous or hurtful evidence admitted was as to the intestate's heirs at law, and their dependency upon him. When the character of the train was ascertained, the court orally admonished the jury that they should not give any consideration to that evidence, and again in its written instructions reiterated that statement. We are disposed to attribute to a jury Solomon-like wisdom in questions of fact. On a matter of excluded testimony why should we regard them as controlled and influenced by child-like impressions? We must assume that they are men of intelligence and probity sufficient to feel themselves bound by oath to observe the law of the case as given to them by the court, and therefore I am forced to the conviction that they did disregard the evidence above referred to.

The necessity of dissenting from my associates of the court is not only unpleasant, but embarrassing. For their ability, and their honesty of opinion, and sincerity of purpose, I have the utmost respect. It may seem a light thing to dissent because one thereby in a measure escapes responsibility for the effect of the opinion, but because of my respect for the other members of the court it is to me a most serious undertaking. But notwithstanding these considerations, I cannot refrain from giving expression to my opinion upon this question.