## UNION PAC. RY. CO. v. ARTIST.

### (Circuit Court of Appeals, Eighth Circuit. February 12, 1894.)

### No. 342.

1. RELEASE AND DISCHARGE—CONSTRUCTION.
   A release for settlement of claim for certain personal injuries specified in the release, and also "of and from all manner of actions, causes of action, claims and demands, whatsoever, from the beginning of the world to this day," does not cover personal injuries not therein specified, and not known to exist at the time the release is executed, since the general terms in the release are limited by the preceding specifications.

2. MASTER AND SERVANT—NEGLIGENCE OF MASTER—CHARITY.
   A master who sends his servant for treatment to a hospital maintained by the master for charitable purposes is not responsible for injuries caused to the servant by the negligence of the hospital attendants, where the master has exercised ordinary care in selecting such attendants.

3. CHARITIES—HOSPITAL—RAILROAD COMPANIES—NEGLIGENCE.
   A hospital maintained by a railroad company for the free treatment of its employes, supported partly by the monthly contributions of all its employes and partly by the company, and not maintained for profit, is a charitable institution.

In Error to the Circuit Court of the United States for the District of Wyoming.

Action by Andrew S. Artist against the Union Pacific Railway Company. Plaintiff obtained judgment. Defendant brings error.

This writ of error is brought to reverse a judgment against the Union Pacific Railway Company for the malpractice of physicians and the negligence of attendants in a hospital maintained by it, for the benefit of its employes, at Denver, in the state of Colorado. The evidence tended to show these facts:

The Union Pacific Railway Company requires each of its employes to contribute from his wages 25 cents a month towards the support of a medical department. The railway company contributes the amount required in addition to the sum thus raised from the contributions of the employes to pay the expenses of this department. At the time the defendant in error was treated at the hospital, the company was contributing from $2,000 to $4,000 per month for this purpose. With this fund the railway company maintained several hospitals for the treatment of its employes when they were sick or injured, and employed physicians and attendants to care for them at the hospitals, and physicians and surgeons to attend them outside the hospitals, at important points on its lines of railroad. All the employes of the

railroad company, except those injured in fights, those injured when drunk, those sick from chronic diseases, and those suffering from certain specific diseases, were received and treated at these hospitals free of expense or charge, whenever they were sick or injured, regardless of the manner in which, or the time at which, the injury was received or the disease contracted, and whether the railway company had or had not any connection with the cause of it. The physicians attending the hospitals had the privilege of treating their private patients in them, and these patients were the only ones who were required to pay for their board and treatment; but the moneys received from this source were inconsiderable,—not more than $300 per annum. Andrew S. Artist, the defendant in error, had his foot and leg injured on the 4th day of October, 1889, while he was in the employment of the company, and was treated at one of the hospitals maintained by it in the way we have stated from October 7, 1889, until January 7, 1890, when he was discharged as cured. In the course of his treatment the physicians at the hospital properly inserted a rubber drainage tube, but, through the carelessness of the physicians or of the attendants, a portion of it was left in the leg as the wound healed, and when he was discharged. It caused suffering and partial disability until it was removed by a surgical operation in April, 1892. January 13, 1890, while both parties were ignorant that this tube remained in the leg, Artist received from the company $150, and signed a receipt or release, the material parts of which are as follows:

"The Union Pacific Railway Company,

"To Andrew S. Artist of Cheyenne, Wyoming.

"1890.
"January 13.

"For amount agreed upon in settlement of claim of Andrew S. Artist against the Union Pacific Railway Company on account of injuries received at McCammon, on Oregon Short Line, on October 4, 1889, while assisting in switching a burning baggage car from main track to side track, said Artist being an engineer in the employ of said company, but returning from leave of absence at time of accident, said injury consisting of deep, punctured, and lacerated wounds, as follows: On inner surface of right thigh. On inner surface of right foot. Comp. fracture of fourth toe of right foot. Contusion in region of spine. Contusion on left foot and face. (Settlement is in full of all claims and demands of whatever character.) * * *

"Received, Pocatello, Idaho, January 13, 1890, of the Union Pacific Railway Company, one hundred and fifty dollars in full payment of the above account. In consideration of the payment of said sum of money, I, Andrew S. Artist, of Cheyenne, in the county of Laramie, in the state of Wyoming, hereby remise, release, and forever discharge the said company, its operated, leased, controlled, and auxiliary lines and companies, of and from all manner of actions, causes of action, suits, debts and sums of money, dues, claims and demands, whatsoever, in law or equity, which I have had or now have against said company by reason of any matter, cause, or thing whatever, whether the same arose upon contract or upon tort, from the beginning of the world to this day.

"In testimony whereof, I have hereunto set my hand this thirteenth day of January, 1890."

Counsel for the company requested the court to charge the jury that this release was a complete defense to the action, and the refusal to give that request is the first error assigned. The same counsel requested the court to charge the jury as follows: "If you believe from the evidence that the hospital was maintained by the defendant, not for the purpose of deriving profit therefrom, but as a charitable enterprise, so far as defendant's employes were received therein, then the only obligation of the defendant, in receiving its employes at said hospital, was to use ordinary care in selecting its physicians and attendants therein; and, since no negligence in the employment of physicians is here charged, you will, in case you find the hospital to have been maintained as above stated, find for the defendant." The court refused to give this instruction, and charged the jury that the hospital was not a

charitable institution, in any sense that those words are used in the law, and that the company was bound to use reasonable care to see that the treatment given to patients in this hospital was such as was ordinarily given in hospitals of this kind to such patients; and this ruling is the second error complained of.

John W. Lacey (John M. Thurston and Willis Van Devanter, on the brief), for plaintiff in error.

Frank H. Clark, for defendant in error.

Before SANBORN, Circuit Judge, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

General words, alone, in a release, are taken most strongly against the releasor. But when there is a particular recital followed by general words the latter are qualified by the particular recital. Jackson v. Stackhouse, 1 Cow. 122, 126, and cases cited; 2 Pars. Cont. 633, note. The court below properly applied this rule to the release in this case. The general words in the last half of it are limited by the very specific recital of the injuries that the $150 was to be in settlement of, which is contained in the first half of the release. It was the claims for these injuries, and for these only, that this release discharged the company from. The injury now complained of was then unknown to both parties, and their settlement was without reference to it. A disregard of the rule would work manifest injustice, and impose upon the defendant in error a release he did not intend to make. There was no error in this ruling.

Was the company liable for the malpractice of the physicians, or the carelessness of the attendants, at the hospital, if that hospital was maintained as a charitable enterprise, and not for the purpose of deriving profit from it? If one contracts to treat a patient in a hospital—or out of it, for that matter—for any disease or injury, he undoubtedly becomes liable for any injury suffered by the patient through the carelessness of the physicians or attendants he employs to carry out his contract. If one undertakes to treat such a patient for the purpose of making profit thereby, the law implies the contract to treat him carefully and skillfully, and holds him liable for the carelessness of the physicians and attendants he furnishes. But this doctrine of respondeat superior has no just application where one voluntarily aids in establishing or maintaining a hospital without expectation of pecuniary profit. If one, out of charity, with no purpose of making profit, sends a physician to a sick neighbor or to an injured servant, or furnishes him with hospital accommodations and medical attendance, he is not liable for the carelessness of the physicians or of the attendants. The doctrine of respondeat superior no longer applies, because, by fair implication, he simply undertakes to exercise ordinary care in the selection of physicians and attendants who are reasonably competent and skillful, and does not agree to become personally responsible for their negligence or mistakes. The same rule applies to corporations and to individuals, whether they are

engaged in dispensing their own charities, or in dispensing the charitable gifts of others intrusted to them to administer. One reason why corporations and individuals conducting hospitals supported by charitable endowments and contributions, and operated to heal the sick and injured, but not for profit, are not liable for the negligence of their employes, is, that the moneys in their hands constitute a trust fund devoted to a charitable purpose, and the courts refuse to permit it to be diverted to the very different purpose of paying for the malpractice of their physicians or the negligence of their attendants. Moreover, the corporations or individuals that administer such trusts must, after all, leave the treatment of the patients to the superior knowledge and skill of the physicians. They cannot direct the latter, as the master may ordinarily direct the servant, what to do, and how to do it. If they did do so, the physicians would be bound to exercise their own superior skill and better judgment, and to disobey their employers, if, in their opinion, the welfare of the patients required it. And, finally, the patient is not required to accept the proffered accommodations and attendance. They are but freely offered to him. He may refuse to accept them, and seek other physicians and other accommodations. It would be a hard rule, indeed,—a rule calculated to repress the charitable instincts of men,—that would compel those who have freely furnished such accommodations and services to pay for the negligence or mistakes of physicians or attendants that they had selected with reasonable care. No such rule has ever prevailed in this country. The rule is that those who furnish hospital accommodations and medical attendance, not for the purpose of making profit thereby, but out of charity, or in the course of the administration of a charitable enterprise, are not liable for the malpractice of the physicians or the negligence of the attendants they employ, but are responsible only for their own want of ordinary care in selecting them. McDonald v. Hospital, 120 Mass. 432; Insurance Patrol v. Boyd, 120 Pa. St. 624, 647, 15 Atl. 553; Van Tassell v. Hospital (Sup.) 15 N. Y. Supp. 620, and note; Glavin v. Hospital, 12 R. I. 411; Laubheim v. Steamship Co., 107 N. Y. 228, 13 N. E. 781; Secord v. Railway Co., 18 Fed. 221; Richardson v. Coal Co., (Wash.) 32 Pac. 1012.

Under the evidence in this case, the medical department and hospitals of the Union Pacific Railway Company fall fairly within this rule, and the reasons that support the rule apply to this case with all their force. The test which determines whether such an enterprise is charitable or otherwise is its purpose. If its purpose is to make profit, it is not a charitable enterprise. If it is to heal the sick and relieve the suffering, without hope or purpose of getting gain from its operation, it is charitable. Tried by this test, the hospitals and medical department of this company are a great public charity. They are supported by the voluntary contributions of this great corporation and of its employes, without the purpose to profit thereby. We say by their "voluntary contributions" not unadvisedly. We have not failed to notice that the defendant in error testified that the contribution of 25 cents a month made

by each employe was a compulsory assessment, and that the company took it out of the pay of such employe. But how it could be compulsory does not appear. If it was a part of the pay of the employe, the company could not lawfully take it out without his consent. If he did not consent, then he did not contribute, and the company still owes him the amount of this assessment. If he did consent, he voluntarily contributed the amount of his assessment. Whatever may be said of the contributions of the employe, there is no question whatever but that the gift of $2,000 to $4,000 per month made by the company was purely voluntary and charitable. These contributions of 25 cents per month from each employe, and of from $2,000 to $4,000 per month from the company, constituted a trust fund devoted to the purpose of furnishing hospital accommodations, physicians, and surgeons for the relief of the sick and injured employes without charge or expense to them. For this purpose this fund was intrusted to this company to administer. There is no evidence that there ever was any purpose or intention on the part of the company of making any profit through the operation of this hospital or the supplying of these physicians. The sole purpose that this record discloses was to relieve these employes from sickness and suffering. In Jackson v. Phillips, 14 Allen, 556, Mr. Justice Gray defined a "charity" as follows:

"A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

The gifts of this corporation and its employes are clearly within this definition. There is no doubt that any one of these employes could compel the application of this fund to the purpose for which it was collected, in any court of equity having jurisdiction. There was no express contract made by this company to treat this defendant in error in the hospital, for his injuries. It is true that he made his contribution to the fund to maintain this charitable enterprise, but he paid nothing further for his hospital accommodations or his treatment. He neither contributed nor paid any more than he would have contributed if he had never been treated at all. The company, as the trustee and administrator of this charity, offered him the hospital accommodations and the physicians in its employment, and he accepted them. From these facts no contract to treat him with ordinary skill and care can be implied, because, in all that it did in this behalf, this company was conducting a charitable enterprise. The company was not organized for the purpose of furnishing and operating hospitals and supplying medical attendance for gain, and such a business would be clearly beyond its chartered powers. It was chartered to construct and operate a railroad and telegraph line. It was under no legal obligation to give thousands of dollars per annum to furnish hospitals and physicians for its employes, and its appropriation of this money to this purpose was a

gift,—a charity. If it be urged that this gift may have been prompted by an ulterior and selfish motive,—that the company may have thought that the operation of its medical department would protect it from excessive claims for injuries resulting to its servants, —the answer is that the true test of a public charity is not the motive of the donor, but the purpose to which the money given is to be applied. If argument, authority, and illustration in support of this proposition are wanted, they will be found in the learned and exhaustive opinion of Mr. Justice Paxson in Insurance Patrol v. Boyd, 120 Pa. St. 642, 646, 15 Atl. 553. If a dozen of the employes of this company had contributed a fund, out of charity, to furnish one of their number, who was injured, with hospital accommodations and medical attendance, they certainly would not have been liable to him for the malpractice of the physicians or the negligence of the attendants they employed. If they had intrusted such a fund to a third person to administer, who, out of charity, contributed to it more largely, and he furnished the accommodations and attendance by the use of this fund, it goes without saying that he would not be liable for the negligence of the physicians or attendants he employed. That the party to whom this charitable gift is intrusted, the party that contributes most liberally to it, and the party that cannot by any possibility derive any direct profit or benefit from it, since it is not subject to bodily ailments and injuries, is a corporation, cannot extend the limits of legal liability here.

The result is that the doctrine of respondeat superior has no application to this case. The only contract the law implies here is the agreement on the part of the company to use reasonable care to select and obtain skillful physicians and careful attendants, and if the company performed that contract it was responsible no further. In other words, it was responsible for the discharge of its own personal duty, and not for the performance of the duties of its employes. In our opinion the instruction on this subject requested by the counsel for the company should have been given, and the judgment is accordingly reversed, with costs, and the case remanded, with instructions to grant a new trial.