### POWERS v. MASSACHUSETTS HOMŒOPATHIC HOSPITAL.

(Circuit Court, D. Massachusetts. December 7, 1899.)

#### No. 330.

1. CHARITIES.—PUBLIC HOSPITAL—LIABILITY TO PATIENTS.

The fact that a public hospital, chartered as a charitable corporation, exacts or receives a pecuniary consideration from a patient, does not affect its character as a charitable institution, nor its rights or liabilities as such in relation to such patient.

2. SAME.

There is no liability on the part of charitable corporations, arising out of the method of administering the charity, to those who accept their bounty.

3. SAME.

A patient in a public hospital chartered as a charitable corporation cannot recover from such corporation for injuries resulting from the negligence of a nurse employed in its hospital.

On Motion by Defendant for Direction of a Verdict.

Thomas H. Russell and Arthur H. Russell, for plaintiff in error.

Charles P. Greenough and Julian Codman, for defendant in error.

PUTNAM, Circuit Judge (orally). This is a suit for damages to compensate for an injury alleged to have occurred to a patient through the neglect of one of defendant's nurses.

The first question which presents itself is whether this is a chari-

table corporation. The original charter of the corporation, standing alone, leaves the matter in great doubt. Of course, it provides for the maintenance and care of the sick, but that is not necessarily a public charity. There are hospitals for the care of the sick which are private institutions, and are run for private advantage. But the act of 1890 expressly declares this to be a "charitable corporation," and that ends the question. We must also recognize the fact that the statutes of Massachusetts, as well as the common law, fully recognize charities and charitable uses, and favor them, so that I am not administering simply what I may gather to be the sentiment of the community, but that sentiment enacted into law as fully as though it was printed at large in the statutes of the state. The common law recognizes charities, and favors them, and therefore, in determining the relations of charities, I must consider that the underlying ideas of charitable institutions, and the underlying sentiment which governs the community with reference to them, form a part of the common law, and are to be administered by me accordingly.

The foundation on which the rules must be built up which govern this case is the charter of the defendant corporation, and the effect to be given to it. That is strictly a local question, as to which the courts of the United States are compelled to follow the decisions of the state courts, if clearly in point. The fact that the hospital received a pecuniary sum in this particular case from the patient, or the fact that it generally receives sums from patients, does not, under the laws of Massachusetts, change its nature. That was decided in Gooch v. Association, 109 Mass. 558, 567. The court said:

"The small amount of money and property required to be furnished by those who entered as inmates goes to supplement the charitable fund, and falls far short of being a compensation to the defendants for what the inmates receive. Hospitals and schools generally require some payment of this kind, but are none the less charities on that account."

I think I would be justified in disposing of the case in behalf of the defendant on the authority of McDonald v. Massachusetts General Hospital, 120 Mass. 432. But the reasons given are not satisfactory to my mind. In fact it is difficult to say where that case is rested. Therefore, though I must be careful not to assume anything inconsistent with what I find in the Massachusetts decisions, I prefer to put the case on its true ground. The opinion in 120 Mass. makes some reference to the fact that the funds of a charitable corporation cannot be appropriated to payment for an injury to a patient by the neglect of the officers of the corporation. The funds held by the defendant in this case, and generally by hospitals throughout New England, are not tied up by specific trusts, and may be supposed to be somewhat under the control of the corporation. I certainly would not be willing to accept here a rule of law which would compel me, if hereafter it should turn out that this corporation neglected the interior stairways or other portions of Beck Hall, which it owns, and out of which it derives a profit, to say that it had no funds out of which a payment could be made in case of an injury arising from such neglect. In my view the true rule is that there is no liability on the part of charitable corporations, arising out of the administration of

the charity, to those who accept their bounty. And neither the suggestion that there is no fund out of which an execution can be satisfied, nor that made in Railway Co. v. Artist, 9 C. C. A. 14, 60 Fed. 365, 23 L. R. A. 581, that public policy requires that suits of this sort should not be entertained, nor the contrary suggestion in Glavin v. Rhode Island Hospital, 12 R. I. 411, that public policy requires they should be sustained, touches the real issue.

This brings me back to the proposition that no person who accepts the bounty of a charitable corporation, or accepts the bounty of any charity, can maintain a suit on account of the method of the administration of the bounty which is accepted. This is putting into the law the homely, but expressive, phrase: "You must not look a gift horse in the mouth." It is absolutely inconsistent with the underlying idea of charities as recognized by the law, to hold that the same rule applies to a person employed for compensation to do a certain service as to the distribution of "charity." The person who enters a charitable hospital is not a contractor; neither is the hospital a contractor with that person. The person who enters is a mere licensee, like a guest who enters one's house, and who must take the service as he finds it. Assume that a person enters one's house, and is taken with a severe sickness; assume that he is a stranger, and is suddenly taken with a severe sickness, and is received into one's house. Can one be held responsible for the selection of an incompetent surgeon or physician, or for neglect on the part of a servant, with reference to the care of that person? Pollock (Torts [4th Ed.] at page 473) lays down what has always been held to be the law:

"'Invitation' is a word applied in common speech to the relation of host and guest. But a guest (that is, a visitor who does not pay for his entertainment) has not the benefit of the legal doctrine of invitation in the sense now before us. He is, in point of law, nothing but a licensee. The reason given is that he cannot have higher rights than a member of the household of which he has for the time being become, as it were, a part. All he is entitled to is not to be led into a danger known to his host, and not known or reasonably apparent to himself."

That is the precise rule which applies to a public charity. In this respect private charity and public charity rest on exactly the same ground, and there is no basis in either case to hold that the person who receives bounty is a contractor, a person contracting for service, as one of us engages service when we ordinarily employ a surgeon. He is, in law, only a licensee.

Feoffees of Heriot's Hospital v. Ross, 12 C. & F. 506, came up in Scotland, and the lord ordinary decided in favor of the hospital. It went before the second division of the court of sessions, and the court of sessions decided in favor of the plaintiff. The house of lords reversed this, and restored the decision of the lord ordinary. This institution was founded to receive young children, and train them, by the beneficence of Mr. Heriot. In this case a boy claimed the right to be admitted to the hospital under the terms of the donation. He brought a suit in the nature of a writ of mandamus to require the corporation to admit him, and, inasmuch as the litigation might not be determined before the time when he could be admitted would have expired, relief was asked in the alternative that he might be

allowed damages; and so the case went before the house of lords on the question of damages against the corporation for improperly performing its duty. I gather from the report that there was much dissatisfaction with the administration of the hospital, and that this suit was brought for the purpose of compelling its managers to improve their methods through a public exposition that they were not acting in consonance with the purposes of Mr. Heriot, and not performing their duties as they ought to be performed. In other words, instead of applying to the officers of the crown to remedy the maladministration of a charity, this personal suit was resorted to. The issue was stated by the counsel for Ross as follows:

"If the trustees are made liable, they will be entitled to be repaid out of the trust fund, for this is a mistake in the administration of the trust fund, and is not like an improper and fraudulent act by trustees in direct violation and breach of their trust. They intended to carry out the trust, but have fallen into error in their mode of doing it."

In other words, the charge there was exactly the charge here; that is, negligence, and not willfulness. This case went off on the proposition that there was no fund from which to pay damages. By the terms of the donation, the whole property of the corporation was held under an express trust for its support. But the point to which I call attention, and which is the proposition which ought to guide the courts, is the affirmation that an action of this kind was not known to the common law. Lord Campbell said:

"A doctrine so strange as the court below laid down in the present case ought to have been supported by the highest authority. There is not any authority for it, not a single shred to support it. No foreign or constitutional writer can be referred to for such a purpose."

Again he said:

"It is to be hoped we shall never again hear of a decision like the present, contrary to reason, sense, and justice, and which is wholly unsupported by authority, and is contrary to the law of Scotland."

It is said in this case that there was a special contract. I need only refer again to the fact that the reception—the frequent reception—of money from patients does not change the nature of the institution; and the following out of that proposition necessarily leads to the conclusion that the reception of money from any particular patient does not change the nature of the service rendered that patient, so far as anything which we have here is concerned. What is received is well stated in the case of Gooch v. Association, already referred to, as a proper contribution to a charity on the part of the person who makes the payment and obtains the benefit of the charity. It is not received as compensation. It is not compensation in the sense of the law.

Dr. Powers, who was the plaintiff's physician, testified that he understood that he contracted to receive what the hospital should give. That is the substance of his testimony. He was one of the surgical staff. He knew exactly what the hospital was doing. He knew its methods, and was thoroughly informed of all the matters now before us; and yet he testified as we have said. If it were not so, the condition in law would be the same, because, this being a

charitable corporation by express statute, any contract made by its officers which would impose a liability beyond that which the law raises would be ultra vires, and of no value.

I do not wish any one to accept the idea that, because this court denies a private suit, it gives encouragement to the unsuitable or careless management of this hospital or any other. If such a condition of things should arise with any charitable corporation, the remedy is in the hands of the state. A public charity is subject to the visitation of the state, and, in Massachusetts, expressly subject to the visitation of the attorney general; and provisions are made to remedy any maladministration. While I do not anticipate in this particular hospital any such necessity, yet I wish to be understood that any disposition of civil suits by the courts does not leave those who manage public charities free to neglect them. The true remedy in such cases is in the hands of the commonwealth.

There must be a judgment for the defendant.