## Robert Smith Parks v. Northwestern University.
### Gen. No. 11,852.

1. PUBLIC CHARITY—*what comes within legal definition of.*  A university dependent upon trust funds, and incidental tuition fees not required for purposes of gain, comes within the legal definition of a public charity.

2. RESPONDEAT SUPERIOR—*eleemosynary institution exempt from doctrine of.*  Public charities are eleemosynary institutions and are exempt from the operation of this doctrine.

Action on the case for personal injuries.  Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1904.  Affirmed.  Opinion filed July 11, 1905.

ASHCRAFT & ASHCRAFT, for appellant; W. S. DRAPER, of counsel.

H. H. C. MILLER and C. G. LITTLE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The record in this case presents the question whether the appellee, Northwestern University, is liable to one of its students who paid to it a sum of money for his tuition, for an injury received by him while pursuing his studies in its chemical laboratory resulting from the negligence of the professor or instructor in charge, there being no allegation or charge in the declaration that the defendant was negligent in the selection or appointment of such professor or instructor.

The declaration charges the loss of an eye of the plaintiff, through the negligence of the professor, when the plaintiff was in his charge as a student, and in the class room or laboratory.  A demurrer was sustained to the declaration upon the ground that the defendant is a charitable or eleemosynary institution, and for that reason was exempt from liability, although the declaration charges it was conducting a school and undertook to teach the plaintiff for hire.

The question as to whether the defense should be raised
by demurrer or plea is waived by counsel for appellant in
their brief, and it is agreed that the case may be considered
as if the charter of the defendant was fully pleaded, and
the issue of law made thereon.

The defendant is operating under a charter conferred by
the Legislature of this State, (Private Laws of Illinois
1851, p. 20) and amendments thereto passed in 1855, 1861
and 1867. An examination of the Act of 1851 shows that
the defendant holds its property of every kind solely for
educational purposes. Its entire funds, whether derived
from money or property given to it, or from income from
such funds or properties, or from the tuition of students or
other sources, must be used solely for educational purposes.
The powers granted to it are for the purpose of enabling
it to handle and manage its property in aid of the main pur-
pose of its creation, which is education, and for no other
object or purpose. A public charity is not necessarily con-
fined to institutions or corporations which confine their gifts
or assistance to the poor and needy. The term public char-
ity has a broader significance. One of the earliest forms
of public charity known to the law was that of a school and
college. In Dexter v. Harvard College, 176 Mass., 192,
the court said: "That a gift for the promotion of educa-
tion in Harvard College is a public charity, is a proposition
too plain to need discussion. In St. 43 Eliz., chap. 4, sec.
1, 'Schools of learning, free schools and scholars in univer-
sities, are mentioned as charitable objects. Such a public
charity need have no special reference to the poor.' In
American Academy v. Harvard College, 12 Gray, 582-594,
Chief Justice Shaw says: 'That a gift designed to pro-
mote the public good, by the encouragement of learning,
science and useful acts, without any particular reference
to the poor, is regarded as a charity, is settled by a series
of judicial decisions and regarded as the settled practice
of a court of equity. Such is a bequest for the improve-
ment of a city,   *   *   *   to establish new scholarships in
a college,   *   *   *   to found and endow a college.' "

33

The cases of Andrews v. Andrews, 110 Ill., 223-231; Female Academy v. Sullivan, et al., 116 Ill., 375; Vidal v. Girard Executors, 2 How., 127; Downs v. Hospital, 101 Mich., 555; Fire Ins. Patrol v. Boyd, 120 Pa. State, 624; Currier v. Trustees Dartmouth College, 117 Fed. R., 44, hold to the same effect. Our conclusion, therefore, is that the defendant is a public charity, depending entirely upon trust funds for its support, and must be so treated and held by courts.

Counsel for appellant do not controvert the general proposition that defendant is a public charity, but they insist that it is not such a public or *quasi* public corporation as to entitle it to exemption from suits for damages arising from the negligence or mismanagement of its officers and agents within the scope of their duties as such; nor is it exempt from civil action on account of its negligence in not providing a safe place in its chemical laboratory in which the plaintiff could pursue his studies, or for the negligence of its vice-principals in conducting the business for which it is chartered. They urge that the doctrine, which had its origin in Russell v. Men of Devon, 2 D. & East, 667, and Halliday v. St. Leonard, 11 C. B. N. S., 192, and has been generally accepted in the United States, exempting towns, counties and all involuntary governmental organizations from liability for negligence in maintaining streets and bridges and in their municipal acts, has no application to corporations of the character of defendant, which have accepted a private charter. We do not understand, however, that the exemption from liability contended for by appellee is based upon, or springs from the principle upon which involuntary municipal corporations such as towns, counties, school districts, etc., are exempt from liability for negligence in their municipal acts. As stated in Elmore v. Drainage Commissioners, 135 Ill., 269: "In such organizations the duties and their correlative powers are assumed in *invitum,* and there is no liability to respond in damages in a civil action for neglect in the performance of duties, unless such action is given by statute.

"The grounds upon which the liability of the municipal corporation proper is usually placed are, that the duty is voluntarily assumed, and is clear, specific and complete, and that the powers and means furnished for its proper performance are ample and adequate. In such cases there is a perfect obligation, and a consequent civil liability for neglect in all cases of special private damage."

If we are to apply these principles to public charities, as appellant contends, the logic would be clear, and all public charities must be held liable, for they are all voluntarily assumed and administered, and being voluntarily assumed, the liability would follow, and the funds and properties contributed to them by the donors would be in danger of being swept away and applied to objects not contemplated by the donors. But, in our opinion, these principles are not applicable to public charities. The principle upon which public charities are held exempt from the doctrine of *respondeat superior* is that a public charity, whether incorporated or not, is but a trustee, and is bound to apply its funds and property in furtherance of the charity, and not otherwise. The law will not permit the trustee to divert or use the funds or property of his trust for any object not contemplated in the trust, and what the law will not permit the trustee to do, it will not do itself. If the doctrine of *respondeat superior* is to be applied to a trust of the character here involved, as contended by appellant, we would have a result contrary to all reason and justice. Damage would be paid not from the pocket of the wrong doer, but from a trust fund, in violation of the terms and objects of the trust.

In reviewing the case of Currier v. Trustees of Dartmouth College, 117 Fed. R., 44, Judge Putnam, although holding that the court was not compelled to decide the question, expresses so aptly the unreasonableness of the doctrine contended for by appellant that we quote his language. He says: "Nevertheless, there are difficulties of a serious character as suggested by the learned judge in connection with the disposition of this case in the Circuit Court, which ren-

der it apparently contrary to the fundamental notions of
justice to apply to institutions of the character of the de-
fendant the ordinary rule with regard to negligence and
reasonable care to their full extent. As well suggested by
him, is the institution liable for some mistake of some pro-
fessor in conducting a difficult experiment in the chemical
laboratory, or of an assistant to the professor, when by the
very nature of things assistants are somewhat largely inex-
perienced? Does the law require that all the appurtenances
of a gymnasium attached to an educational institution shall
be regarded with the same strict rules as those of a manu-
facturing establishment? Our institutions of learning are
commonly known as often poorly endowed, and in the re-
ceipt of no profits, and at the most of only a moderate in-
come, and often, therefore, disenabled from making use on
their premises of modern appliances for safety. Are they
liable to one who enjoys their beneficence, knowing that
such is their frequent position, as ordinary business cor-
porations are liable?"

In the Feoffees of Hariot's Hospital v. Ross, 12 C. & F.,
506, an action was brought by Ross, a person eligible for
admission to the hospital, to recover damages for the wrong-
ful refusal of the trustees to admit him. The case was ap-
pealed to the House of Lords where it was unanimously
held that the action could not be maintained. Lord Brough-
am said: "The charge is that the governors of the hos-
pital have illegally and improperly done the act in ques-
tion, and therefore, because the trustees have violated the
statute, therefore, what? Not that they shall themselves
pay the damages, but that the trust fund which they ad-
minister shall be made answerable for their misconduct.
The finding on this point is wrong, and the decree of the
court below must be reversed." Lord Cottenham said: "It
is obvious that it would be a direct violation, in all cases, of
the purpose of a trust if this could be done, for there is not
any person who ever created a trust that provided for pay-
ment out of it of damages to be recovered from those who
had the management of the fund. No such provision has

been made here. There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity. To give damages out of a trust fund would not be to apply it to those objects which the author of the fund had in view, but would be to divert it to a completely different purpose."

From the time of the decision in the above case down to the present, no decision in England or in this country can be found, we think, holding that an institution of learning, like the defendant, is liable under like or similar circumstances to those charged in the declaration. On the contrary the uniform course of the decisions has been in favor of non-liability. We refer to a few of them. Riddle v. Proprietors of the Locks, 7 Mass., 187; McDonald v. Mass. Gen. Hospital, 120 Mass., 432; Sherbourne v. Yuba Co., 21 Cal., 113; Brown v. Inhabitants of Venalhaven, 65 Me., 402; Mitchell v. City of Rockland, 52 Me., 118; City of Richmond v. Long, 17 Grattan, 375; Ogg v. City of Lansing, 35 Ia., 495; Murtaugh v. City of St. Louis, 44 Mo., 479; Patterson v. Penn. Reform School, 92 Pa., 229.

It is further urged that the plaintiff was a student for hire, and that the defendant is authorized to charge and receive tuition by its charter. Therefore, when the plaintiff was admitted as a student and paid his tuition, a contract existed between the plaintiff and defendant in which the defendant assumed precisely the obligations and incurred precisely the same liability an individual would have incurred under a like contract. We are of the opinion that the fact that the plaintiff was required to and did pay tuition for the instruction and benefits offered by the defendant, does not deprive the defendant of its eleemosynary character. The amounts thus received from plaintiff and other students are not for private gain, but contribute to the funds of the institution and enable it more effectually to accomplish the purposes for which it was founded and organized. The fact that the defendant received from the plaintiff and other students tuition, does not make it the less a public charity, nor does it expose the trust fund to

the liability of being depleted or frittered away by the neg-ligence of its officers, professors or employees. In case of injury the wrong-doer, not the trust fund, must respond. Gooch v. Association, 109 Mass., 558; Powers v. Mass. H. Hospital, 109 Fed. R., 294; Downs v. Hospital, 101 Mich., 555.

The judgment of the court below is correct and is affirmed.

*Affirmed.*