ROBERT B. DUNCAN, ADMINISTRATOR, APPELLEE, V. NE-
BRASKA SANITARIUM & BENEVOLENT ASSOCIATION,
APPELLANT.

FILED OCTOBER 18, 1912.    No. 17,086.

1. **Charities: HOSPITALS: LIABILITY: NEGLIGENCE OF NURSES.** A chari-
table institution conducting a hospital solely for philanthropic
and benevolent purposes is not liable to inmates for the negli-
gence of nurses.

2. ———: ———: ———: ———. A charitable institution conduct-
ing a hospital does not, by accepting compensation from a pa-
tient who is able to pay for room, board and care, incur liability
to such patient for the negligence of nurses.

3. ———: ———: ———: ———. A charitable institution con-
ducting a hospital for benevolent purposes alone does not neces-
sarily incur liability in damages for the death of an insane
patient who committed suicide when alone in a room, though pay
for the patient's room and care was accepted under an oral
agreement to keep a nurse in constant attendance.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. *Reversed.*

*John M. Stewart* and *T. F. A. Williams,* for appellant.

*Charles O. Whedon* and *C. P. Peterson, contra.*

ROSE, J.

When Sadie Duncan was occupying a room in defend-
ant's hospital, she committed suicide in absence of a nurse
or other attendant, and this is an action by her hus-
band as administrator of her estate to recover from de-
fendant damages for negligently causing her death. Plain-
tiff alleges that, in consideration of $45 a week, she was
accepted as an inmate under a verbal agreement by de-
fendant to give her necessary medical attention and to
furnish a trained nurse to be in constant attendance upon
her. In the petition it is also alleged that her death was

due solely to the wrongful act, neglect, default and care-
lessness of defendant in leaving her alone and unattended.
The right of plaintiff to a recovery was resisted on the
ground that defendant is exempt from liability to its
inmates for the negligence of nurses and other attend-
ants, because it is a charitable institution, conducted
solely for philanthropic and benevolent purposes. From
a judgment in favor of plaintiff for $3,275, defendant has
appealed.

After giving a number of instructions the trial court
charged the jury as follows: "The undisputed evidence
further shows that the defendant is a charitable institu-
tion maintained for philanthropic and charitable and
benevolent purposes, and in no manner directly or indi-
rectly for private profit or dividend-paying to any one."
This instruction was fully justified by the evidence, and
was properly given. In stating the law applicable, how-
ever, the trial court said: "You are instructed that if
you find from the evidence that said Sadie Duncan was
in any sense a charitable patient, or, in other words, a
beneficiary of any bounty at the hands of the defendant,
and the amount paid does not make full pecuniary com-
pensation for the services rendered, then the deceased's
representative, the plaintiff herein, cannot recover, and
your verdict must be for the defendant. On the other
hand, if you find from the evidence that the deceased was
received as a patient on full pay, full pecuniary compen-
sation, and without being the recipient of any charity
or bounty at the hands of the defendant, then the defend-
ant would be liable for any negligence of its agents or
servants which proximately contributed to the deceased's
death."

This instruction is assailed as erroneous. It contains
two propositions of law, and the first seems to be correct.
It is a well-established doctrine that a charitable institu-
tion conducting a hospital solely for philanthropic and
benevolent purposes is not liable to inmates for the neg-
ligence of nurses. Some courts say that one accepting the

benefits of such a charity exempts his benefactor from
liability for the negligent acts of servants. Others assert
that non-liability is based on the ground that trust funds
created for benevolent purposes should not be diverted
therefrom to pay damages arising from the torts of serv-
ants. Exemption from liability is frequently sanctioned
on the ground that public policy encourages the support
and maintenance of charitable institutions and protects
their funds from the maw of litigation. While there is a
diversity of opinion as to the reasons for the rule, the
doctrine itself is firmly established. *Thornton v. Frank-
lin Square House*, 200 Mass. 465, 22 L. R. A. n. s. 486;
*Farrigan v. Pevear*, 193 Mass. 147, 7 L. R. A. n. s. 481;
*Powers v. Massachusetts Homœopathic Hospital*, 101 Fed.
896, 65 L. R. A. 372; *Downes v. Harper Hospital*, 101
Mich. 555; *Parks v. Northwestern University*, 121 Ill.
App. 512, 218 Ill. 381; *Joel v. Woman's Hospital*, 89
Hun (N. Y.) 73; *Ward v. St. Vincent's Hospital*, 50 N. Y.
Supp. 466; *Conner v. Sisters of Poor*, 7 Ohio N. P. 514;
*Abston v. Waldon Academy*, 118 Tenn. 24, 102 S. W. 351;
*Adams v. University Hospital*, 122 Mo. App. 675; *Hearns
v. Waterbury Hospital*, 66 Conn. 98, 31 L. R. A. 224. In
applying the law thus established the trial court was
right.

The second proposition stated in the instruction last
quoted, however, is erroneous. It permits the jury to
find in favor of plaintiff, if full compensation was paid
to defendant. The uncontradicted evidence is that the
agreed rate as pleaded by plaintiff was not paid. On
the contrary, a reduced rate was paid and accepted. Even
if full compensation had been paid, it would not neces-
sarily follow that the patient received no benefit from
charity. She occupied a room in a building maintained
in part at least by donated funds intended for benevolent
purposes. Necessary care, skill and food came from the
same source. On the record as made, the jury should
not have been permitted to find that the inmate had re-
ceived no benefit from charity. A charitable institution

conducting a hospital does not, by accepting compensation from a patient who is able to pay for room, board and care, incur liability to such patient for the negligence of nurses. *Jensen v. Maine Eye & Ear Infirmary,* 107 Me. 408, 33 L. R. A. n. s. 141; *Cunningham v. The Sheltering Arms,* 135 App. Div. (N. Y.) 178; *Gable v. Sisters of St. Francis,* 227 Pa. St. 254; *McDonald v. Massachusetts General Hospital,* 120 Mass. 432; *Powers v. Massachusetts Homœopathic Hospital,* 101 Fed. 896; 65 L. R. A. 372; *Downes v. Harper Hospital,* 101 Mich. 555; *Parks v. Northwestern University,* 121 Ill. App. 512, 218 Ill. 381; *Ward v. St. Vincent's Hospital,* 50 N. Y. Supp. 466; *Conner v. Sisters of Poor,* 7 Ohio N. P. 514; *Taylor v. Protestant Hospital Ass'n,* 85 Ohio St. 90. Money accepted from patients who are able to pay it does not go to persons who may be trustees, directors, founders, or incorporators of the institution, and is not a source of pecuniary gain to private individuals, but is devoted to the general purposes of the charity.

To justify the recovery, plaintiff ably argues that defendant is liable for damages because, for a valuable consideration, it entered into a verbal contract to keep a nurse in constant attendance upon the inmate, because that duty rested on defendant itself and could not be delegated to servants, because the agreement was violated and because the negligent breach of the contract resulted in the death of the inmate. The right to recover damages for the causing of death by a wrongful act is created by statute. Comp. St. 1911, ch. 21, secs. 1, 2. It is based on tort, and not on contract. It does not exist independently of statute. A charitable institution conducting a hospital for benevolent purposes alone does not necessarily incur liability in damages for the death of an insane patient who committed suicide when alone in a room, though pay for the patient's room and care was accepted under an oral agreement to keep a nurse in constant attendance. *Downes v. Harper Hospital,* 101 Mich. 555; *Taylor v. Protestant Hospital Ass'n,* 85 Ohio

St. 90; *Lewis' Adm'r v. Taylor Coal Co.*, 112 Ky. 845, 66 S. W. 1044; *Duncan v. St. Luke's Hospital*, 98 N. Y. Supp. 867. The report of the last case cited shows that an insane woman was kept in a hospital under contract to keep a guard in constant attendance for $7 a day, that the agreement was violated, and that, in absence of a guard, the inmate killed herself. The facts were fully pleaded. The existence and violation of contractual obligations were invoked to sustain a cause of action. In the opinion it was said: "The contract was to keep a constant watch and guard. It was not to prevent the unfortunate patient from committing suicide. Nor could it fairly be held to be within the reasonable intendment of this contract that the hospital agreed to pay to the husband the value of his wife's life to him in case she did commit suicide. There has been no case cited to us, nor have we been able to find one, which allows a recovery upon such a complaint or such a state of facts. Nor can we see any reason why there should be any difference in the rule where the tortious act which caused death is alleged to be a breach of an express contract than where it is alleged to be a breach of an implied contract, or where no contractual relation at all existed."

This reasoning is applicable to the present case. In permitting the jury to find in favor of plaintiff, if defendant received full compensation, the trial court was in error. As the case stood when submitted to the jury, there should have been a peremptory instruction for defendant. The judgment is therefore reversed and the cause remanded.

REVERSED.

LETTON, J.

I concur in the result on the ground that full payment for service is not the test of liability, and the instruction to that effect is erroneous.