## ELLSWORTH v. BRATTLEBORO RETREAT.

### No. 736.

District Court, D. Vermont.
Nov. 2, 1946.

Joseph A. McNamara and Robert Larrow, both of Burlington, Vt., for plaintiff.

Edwin W. Lawrence and Harold I. O'Brien, both of Rutland, Vt., for defendant.

LEAMY, District Judge.

Marjorie T. Ellsworth of Northampton, Massachusetts, as the widow of and executrix under the will of Samuel M. Ellsworth, has instituted suit against The Brattleboro Retreat, of Brattleboro, Vermont, to recover for the death of the plaintiff's testator while the latter was a patient at the defendant institution. The suit is brought for the benefit of herself and her two minor children pursuant to Sections 2859 and 2860 of the Public Laws of Vermont.

The complaint is in two counts, the first sounding in tort and the second in contract.

In Count I after alleging her residence, the amount involved and her appointment, she alleges, in substance, that the defendant is engaged in conducting a hospital for the treatment of patients for compensation; that on July 1, 1944, it received the testator as a patient for treatment and care; that at the time of his admission he was mentally ill, suffering from temporary insanity with severe mental depression and suicidal tendencies, all of which facts were well known to the defendant. That it was

the duty of the defendant, which the latter undertook, to properly, prudently and carefully care for the testator and to keep him under strict observation and surveillance at all times, but that notwithstanding its duties, the defendant failed to properly care for and treat him and did not keep him under observation and surveillance, "so that as a result of said negligence, plaintiff's testator on, to wit, the 13th day of August, 1944, while suffering from said temporary insanity, did inflict upon himself bodily wounds from which his death resulted on said 13th day of August, 1944."

In Count II, after alleging her residence, the amount involved, her appointment and the business in which the defendant is engaged, she alleges, in substance, that on July 1, 1944, the defendant received the testator as a patient for compensation, and did, by its superintendent and other authorized agents, contract and agree to care for him; that at the time of his admission he was mentally ill, suffering from temporary insanity with severe mental depression and suicidal tendencies, which facts were known to the defendant as the reason for the admission; that the defendant contracted and agreed to properly and prudently care for the patient and to keep him under "such strict observation and surveillance at all times, as his then condition required," but that the "defendant failed to properly care for and treat said testator and did not keep him under observation and surveillance, so that as a result plaintiff's testator on, to wit, the 13th day of August, 1944, while suffering from said temporary insanity, did inflict upon himself bodily wounds from which his death resulted on said 13th day of August, 1944."

The defendant, in its answer, alleges that it is a charitable corporation and as such is not liable for the acts and negligence complained of, and in a separate motion, moves for judgment in its favor, on the pleadings.

That the defendant is a charitable corporation established for the care of those who are mentally ill is not controverted, nor could it successfully be, since the decision of the Vermont Supreme Court in the case of Brattleboro Retreat v. Town of Brattleboro et al., 106 Vt. 228, 173 A. 209.

This Court, in deciding the question presented, would, under the decision in Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, be bound by the substantive law of Vermont. However, since the question of the liability of a charitable institution to a patient for the negligence of its employees has never, to our knowledge, been passed upon by the state courts, and since there is no statute fixing the liability, resort must necessarily be had to the decisions in other jurisdictions for enlightenment.

It seems to be firmly established by the great weight of authority that there can be no recovery in an action of tort for injuries received by a patient through negligence of the servants or agents of a public charity such as a hospital. Or in other words, a charitable institution is not responsible to those who avail themselves of its benefits, for any injuries they may sustain through the negligence or torts of its managers, agents and servants. Scores of cases could be cited but the following will suffice to show the generality of the rule. See notes 14 A.L.R. 572, 23 A.L.R. 923, 30 A.L.R. 455, 33 A.L.R. 1369, 42 A.L.R. 971, 109 A.L.R. 1199, 133 A.L.R. 821 and cases cited therein. See also Thornton v. Franklin Square House, 200 Mass. 465, 86 N.E. 909, 22 L.R.A.,N.S., 486; Downes v. Harper Hospital, 101 Mich. 555, 60 N.W. 42, 25 L.R.A. 602, 45 Am.St.Rep. 427; Parks v. Northwestern University, 121 Ill.App. 512; Id., 218 Ill. 381, 75 N.E. 991, 2 L.R.A., N.S., 556, 4 Ann.Cas. 103; Joel v. Woman's Hospital in State of New York, 89 Hun 73, 35 N.Y.S. 37; Ward v. St. Vincent's Hospital, 23 Misc. 91, 50 N.Y.S. 466; Conner v. Sisters of Poor of St. Francis, 7 Ohio N.P. 514; Abston v. Waldon Academy, 118 Tenn. 24, 102 S.W. 351, 11 L.R. A.,N.S., 1179; Adams v. University Hospital, 122 Mo.App. 675, 99 S.W. 453; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 A. 595, 31 L.R.A. 224; Duncan, Adm'r v. Nebraska Sanitarium & Benevolent Ass'n, 92 Neb. 162, 137 N.W. 1120, 41 L.R.A., N.S., 973, Ann.Cas.1913E, 1127; Weston's Adm'x v. Hospital of St. Vincent of Paul, 131 Va. 587, 107 S.E. 785, 23 A.L.R. 907;

Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 126 N.E. 392, 14 A.L.R. 563.

For decisions in the Federal Courts see Paterlini v. Memorial Hospital Ass'n of Monongahela City, Pa., 3 Cir., 247 F. 639; Powers v. Massachusetts Homoeopathic Hospital, 1 Cir., 109 F. 294, 65 L.R.A. 372; Union Pac. R. Co. v. Artist, 8 Cir., 60 F. 365, 23 L.R.A. 581; Ettlinger v. Trustees of Randolph-Macon College, 4 Cir., 31 F.2d 869. And attention is particularly directed to the case of Bodenheimer v. Confederate Memorial Ass'n, 4 Cir., 68 F.2d 507, certiorari denied 292 U.S. 629, 54 S.Ct. 643, 78 L.Ed. 1483, in which the question there presented had not been passed upon by the Virginia courts.

In Ettlinger v. Trustees of Randolph-Macon College, supra [31 F.2d 871], Judge Parker succinctly discusses the various reasons for the rule and his comments thereon, which I quote with approval:

"As stated above, the courts are practically agreed upon the rule of law applicable here; but they are by no means agreed upon the reason for the rule, and this disagreement has given rise to much discussion on the part of the courts themselves and of textwriters and annotators, as will be readily seen by reference to the above notes and authorities. We do not deem it necessary to choose between the conflicting theories or to enter into the rather inviting field of theoretical discussion. Some courts have based the rule upon the theory that the funds of eleemosynary institutions are held in trust for charitable purposes and may not be diverted to the payment of damages on account of wrongs committed by those who administer them. Other courts base it upon the theory that the doctrine respondeat superior, being itself based upon the theory that the principal derives a benefit from the services of the employee or agent for whose negligence he is held liable, has no application where the service of the employee is for the benefit of humanity and not for the gain of the institution which employs him. Others base it upon broad grounds of public policy, holding that, as the institution is engaged in work highly beneficial to the state and to humanity, its funds ought not to be diverted from this important purpose to the payment of private claims for damages. And still others base it upon the theory of an implied agreement on the part of one accepting the benefits of a charity not to hold it liable for injuries which he may receive at the hands of its servants. All of these theories have to a greater or less extent entered into the formulation of the rule of law which has now become too well settled to be questioned or overturned. Underlying all of them is the matter of public policy, and it is upon this that the rule may be said finally to rest. The theory that trust funds are not to be taken under execution for the torts of those who administer them rests, in the last analysis, upon considerations of public policy, as does the holding that the rule respondeat superior shall not apply to the agents and servants of a charity. So also, the theory of implied agreement can be sustained only if the agreement be conceived of as implied in law as a matter of public policy. But, resting upon public policy, the rule rests upon a sufficiently firm foundation. A policy of the law which prevents him who accepts the benefit of a charity from suing it for the torts of its agents and servants, and thus taking for his private use the funds which have been given for the benefit of humanity, which shields gifts made to charity from 'the hungry maw of litigation' and conserves them for purposes of the highest importance to the state, carries on its face its own justification, and, without the aid of metaphysical reasoning, commends itself to the wisdom of mankind."

Under Count II of the complaint, the plaintiff urges that the defendant is liable, because, for a valuable consideration, it entered into a verbal contract to keep the patient under strict observation and surveillance, because the agreement was violated and because the breach of the contract resulted in the death of the testator.

But this point was also before the Court in Duncan v. Nebraska Sanitarium & Benevolent Ass'n, 92 Neb. 162, 137 N.W. 1120, 1121, 41 L.R.A.,N.S. 973, Ann.Cas.1913E, 1127, and the Court held as follows:

"The right to recover damages for the causing of death by a wrongful act is created by statute. * * *. It is based on tort, and not on contract. It does not exist independently of statute. A charitable institution conducting a hospital for benevolent purposes alone does not necessarily incur liability in damages for the death of an insane patient who committed suicide when alone in a room, though pay for the patient's room and care was accepted under an oral agreement to keep a nurse in constant attendance." Citing Downes v. Harper Hospital, 101 Mich. 555, 60 N.W. 42, 25 L.R.A. 602, 45 Am.St.Rep. 427; Taylor v. Protestant Hospital Ass'n, 85 Ohio St. 90, 96 N.E. 1089, 39 L.R.A.,N.S., 427; Lewis' Adm'r v. Taylor Coal Co., 112 Ky. 845, 66 S.W. 1044, 57 L.R.A. 447; Duncan v. St. Luke's Hospital, 113 App. Div. 68, 98 N.Y.S. 867.

And in Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 75, 126 N.E. 392, 396, 14 A.L.R. 563, in his discussion of the same type of claim, Chief Justice Rugg said: "The allegation of an oral contract with the defendant for careful treatment adds no element of liability to those which would exist otherwise. There can be no liability in contract such as here is alleged, if none exists in tort. The whole matter relates to the execution of the public charity administered by the defendant, and is governed by the same principles in whatever aspect presented." Citing Paterlini v. Memorial Hospital Ass'n of Monongahela City, Pa., supra; Duncan v. St. Luke's Hospital, supra; and Magnuson v. Swedish Hospital, 99 Wash. 399, 403, 169 P. 828.

The case of Putnam Hospital v. Allen, 2 Cir., 34 F.2d 927, so strongly relied upon by the plaintiff as the law in this jurisdiction on the tort liability of a charitable institution, clearly is not in point. There, the plaintiff Allen was not partaking of the benefits of the institution. She was driving her car on the public highway and while doing so was struck by an ambulance owned by the hospital, thus bringing her under the so-called "stranger" exception to the general rule of exemption.

■ Nor does Section 5544 of the Public Laws of Vermont, cited by the plaintiff in her brief, establish any liability for negligence. It seems clear that this section applies only to the Vermont State Hospital for the Insane at Waterbury, Vermont, and not to the defendant herein. But even though it applies to both, it goes no further than to require the Superintendent to receive, so far as the capacity of the hospital will permit, all persons adjudged in need of treatment and all insane criminals committed thereto and to keep them until they are properly discharged by law.

After careful consideration of the briefs and arguments of counsel, and the authorities upon which they rely, I am of the opinion that the plaintiff, in her complaint, has not stated a cause of action. Let the entry be: "Motion granted. Judgment for the defendant."