JAMES F. MYERS, APPELLANT, V. JOSEPH P. DROZDA, M.D., ET AL., APPELLEES.
DEBORAH L. MYERS, A MINOR, BY JAMES F. MYERS, HER NEXT FRIEND, APPELLANT, V. JOSEPH P. DROZDA, M.D., ET AL., APPELLEES.

141 N. W. 2d 852

Filed April 22, 1966. No. 36014.

John Allan Appleman and Richard G. Stehno, for appellants.

Kennedy, Holland, DeLacy & Svoboda, Joseph P. Cashen, and Clarence E. Heaney, Jr., for appellee Lutheran Medical Center.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

An infant girl and her father urge us to repudiate the court-made rule which has exempted nonprofit charitable hospitals from liabiilty for negligent injuries to patients. In the district court the rule of exemption produced a summary judgment for the hospital on the personal in-

jury claim of the girl and the derivative claim of her father. These appeals followed.

For purposes of review we assume the truth of the following statements. Defendant Lutheran Medical Center is a charitable corporation operating a nonprofit hospital. While the baby girl was a patient in the surgical quarters of the hospital, an employee of defendant hospital negligently anesthetized her. As a result she suffered a cardiac arrest. Defendant hospital carried hospital professional liability insurance with limits of $10,000 per claim and $30,000 aggregate.

In 1912 we adopted a policy of partial immunity which protected parties like defendant hospital. See Duncan v. Nebraska Sanitarium & Benevolent Assn., 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. N. S. 973, Ann. Cas. 1913E 1127. In 1955 we affirmed that policy. See, Muller v. Nebraska Methodist Hospital, 160 Neb. 279, 70 N. W. 2d 86; Cheatham v. Bishop Clarkson Memorial Hospital, 160 Neb. 297, 70 N. W. 2d 96. Today we re-examine it.

The rationale of exemption has these four labels: "Trust fund," "respondeat superior," "implied waiver," and "public policy." Under the trust fund theory the diversion of assets to satisfy tort judgments would breach the trust. Respondeat superior is said to govern a business for profit but not a charity. An implied waiver by a patient of his tort claim is defended as a fair conclusion from the patient-hospital relationship. The public policy contains the assumption that liability would dissipate the assets of charities. See Muller v. Nebraska Methodist Hospital, *supra.*

Although the law of trusts and agency has exempted the hospital from tort liability to its patients, the law has not been applied to the claim of the invitee; a physician may recover, a patient may not. See Marble v. Nicholas Senn Hospital Assn., 102 Neb. 343, 167 N. W. 208. Why? The riddle goes unsolved.

Implied waiver is a fiction. Of many illustrations we

choose one—plaintiff's allegations. At the time of the "waiver" the age of the girl was 1 year. "* * * waiver * * * amounts merely to imposing immunity as a rule of law in the guise of assumed contract or renunciation of right, when all other reasons are found insufficient to support the distinction." President & Directors of Georgetown College v. Hughes, 130 F. 2d 810, at page 826.

The foreboding that tort liability would dissipate assets was dispelled years ago by the following language in President & Directors of Georgetown College v. Hughes, *supra,* at pp. 823-825:

"No statistical evidence has been presented to show that the mortality or crippling of charities has been greater in states which impose full or partial liability than where complete or substantially full immunity is given. Nor is there evidence that deterrence of donation has been greater in the former. Charities seem to survive and increase in both, with little apparent heed to whether they are liable for torts or difference in survival capacity. * * *

"What is at stake, so far as the charity is concerned, is the cost of reasonable protection, the amount of the insurance premium as an added burden on its finances, not the awarding over in damages of its entire assets. * * *

"Whether immunity be found on the 'trust fund' theory, the rule of respondeat superior, so-called 'public policy,' or the more indefensible doctrine of 'implied waiver,' is not for us a controlling consideration. * * * They are merely different names for the same idea, cast according to the predilection of the user * * *. The differences in foundation do not affect even the extent of the departure."

If this exemption formerly met a need, it has had its day. In 1942 four states apparently imposed unqualified liability. President & Dir. of Georgetown College v. Hughes, *supra,* at p. 819. In 1955 we named 22 states, exclusive of Nebraska, which had granted some degree

of immunity, and we said that 10 of them had recently reaffirmed their position. See Muller v. Nebraska Methodist Hospital, *supra*. Afterward courts in 8 of the 22 states abrogated the immunity, and 5 of the 10 "recent" decisions were overruled. See, Mullikin v. Jewish Hospital Assn. of Louisville (Ky.), 348 S. W. 2d 930; Parker v. Port Huron Hospital, 361 Mich. 1, 105 N. W. 2d 1; Collopy v. Newark Eye & Ear Infirmary, 27 N. J. 29, 141 A. 2d 276; Avellone v. St. John's Hospital, 165 Ohio St. 467, 135 N. E. 2d 410; Hungerford v. Portland Sanitarium & Benev. Assn., 235 Or. 412, 384 P. 2d 1009; Flagiello v. Pennsylvania Hospital, 417 Pa. 486, 208 A. 2d 193; Adkins v. St. Francis Hospital of Charleston (W. Va.), 143 S. E. 2d 154; Kojis v. Doctors Hospital, 12 Wis. 2d 367, 107 N. W. 2d 131. Two legislatures intervened on one side or the other. See, Nev. R. S., § 41.480; N. J. S. A., §§ 2A: 53A-7, 53A-8. It is doubtful that any court has overruled a decision declaring a charity to be nonexempt. See Adkins v. St. Francis Hospital of Charleston, *supra*. Liability probably represents the majority view. See Parker v. Port Huron ́Hospital, *supra*. The judicial trend is unmistakable.

Defendant hospital relies upon our prior announcement that any change ought to be made by the Legislature. See Muller v. Nebraska Methodist Hospital, *supra*. If we endorsed legislation by silence, we erred. See, Art. I, § 13, Constitution of Nebraska; Hungerford v. Portland Sanitarium & Benev. Assn., *supra;* Adkins v. St. Francis Hospital of Charleston, *supra*. Stare decisis "was intended, not to effect a 'petrifying rigidity,' but to assure the justice that flows from certainty and stability. * * * we would be abdicating 'our own function, in a field perculiarly nonstatutory,' were we to insist on legislation and 'refuse to reconsider an old and unsatisfactory court-made rule.' " Bing v. Thunig, 2 N. Y. 2d 656, 143 N. E. 2d 3.

"* * * judges of an earlier generation declared the immunity simply because they believed it to be a

sound instrument of judicial policy which would further the moral, social and economic welfare of the people of the State. When judges of a later generation firmly reach a contrary conclusion they must be ready to discharge their own judicial responsibilities in conformance with modern concepts and needs." Collopy v. Newark Eye & Ear Infirmary, *supra.*

The old rule being clearly wrong, we hold that nonprofit charitable hospitals are not exempt from tort liability to their patients. Contrary decisions are overruled to the extent of their inconsistency.

The point of departure from precedent remains to be determined. Loss of exemption may be retrospective, partially retrospective, or prospective. The choice is influenced by these broad considerations: The reasons for overruling the prior decisions; the public interest in institutional stability; justifiable reliance upon the exemption; and uniformity of application to parties similarly situated.

Other courts have considered some of those policy factors. Several decisions removed the exemption prospectively except for the cases being decided. Three reasons were given. First, the charitable corporation may have relied on the old rule whether or not insurance coverage existed. Second, announcement of prospective operation would be dictum. Third, if the effort and expense of challenge were to go unrewarded, appellant would have no incentive to contest the old rule. See, Darling v. Charleston Community Memorial Hospital, 33 Ill. 2d 326, 211 N. E. 2d 253; Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill. 2d 11, 163 N. E. 2d 89, 86 A. L. R. 2d 469; Parker v. Port Huron Hospital, *supra;* Kojis v. Doctors Hospital, *supra.*

We too think that the new rule should be partially retrospective; however, insurance is significant. A differentiating factor between a charity and its insurer is reliance. An insured charity does not rely justifiably on the exemption within the limits of the insurer's lia-

bility. The impact of liability upon an insurer should be relatively light because of its ability to spread the loss. "* * * ordinarily it is impossible to trace the impact of particular legal doctrines upon liability insurance rates." Keeton, Creative Continuity in the Law of Torts, 75 Harv. L. Rev. 463, at page 493. Factors concerning dictum and reward carry some weight but not much.

In conclusion the new rule applies to all causes of action arising after April 22, 1966, the filing date of this opinion. In respect to other causes of action the new rule applies if, but only if, the nonprofit charitable hospital was insured against liability on the claim of the patient, and then only to the extent of the maximum applicable amount of its insurance coverage.

· The judgment is reversed, and the causes are remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

WHITE, C. J., not participating.

BROWER, J., dissenting.

I respectfully dissent from the opinion of the court herein. In my opinion, the office of this court is to interpret the substantive law as it is and of the Legislature as the direct representative of the people to make such changes therein as it deems best for the future. The present decision is nothing but judicial legislation made clear in the opinion which applies the change prospectively as if it were a legislative enactment, which may be necessary if the court is to engage in legislation.

This is particularly ill-advised in the present case when as late as 1955, in considering this same question, this court in Muller v. Nebraska Methodist Hospital, 160 Neb. 279, 70 N. W. 2d 86, expressly stated that if changes were to be made in the law under consideration, it should be done by the Legislature which has heretofore declined to do so.

· It is stated in the majority opinion that the previous rule was court made and that is advanced as a sufficient license for the court to change the law when it sees fit

to do so. When the rule was adopted in Duncan v. Nebraska Sanitarium & Benevolent Assn., 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. N. S. 973, Ann. Cas 1913E 1127, it is quite evident from the decisions cited therein that our previous holding was part of the common law which was adopted by statute, section 49-101, R. R. S. 1943.

This decision indicates whenever existing law in the opinion of this court needs changing, it is the duty of this court to reconsider it.

The scope of the court's work will accordingly be greatly extended into a field hitherto reserved for the Legislature whose duty it is to resolve conflicting social problems, a field in which this court is not fitted. It is the function of courts to declare the law and not to create it.

In the past, attorneys and clients have governed their actions in reliance on what our decisions have said the law was. If judicial legislation is to take place, they will be required to consider whether those decisions were right in the first place or need revision. Their tasks will also be made more difficult.

CARTER, J., joins in this dissent.