429 F.2d 44
 Delbert M. DRAPER, Jr., A. Wally Sandack and Herschel J.
Saperstein, copartners, dba Draper, Sandack & Saperstein,
and Calvin W. Rawlings, Brigham E. Roberts, Wayne L. Black,
John L. Black and Richard C. Dibblee, copartners, dba
Rawlings, Wallace, Roberts & Black, and Stanley V.
Litizzette, Appellees,
v.
The TRAVELERS INSURANCE COMPANY, a Connecticut corporation, Appellant.
 No. 222-69.
 United States Court of Appeals, Tenth Circuit.
 July 16, 1970.
 
 Marvin J. Bertoch, Salt Lake City, Utah (Stephen B. Nebeker, of Ray, Quinney & Nebeker, Salt Lake City, Utah, on the brief), for appellant.
 David K. Watkiss, of Watkiss, Campbell & Cowley, Salt Lake City, Utah, for appellees.
 Before MURRAH, Chief Judge, and BRIETENSTEIN and SETH, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This is an action for attorneys' fees. It was brought by the attorneys who in 1965 settled a negligence suit brought by them for workmen's compensation claimants against Texas Gulf Sulphur Company and the United States. Attorneys' fees are here sought from the workmen's compensation insurance carrier on the ground that it benefitted from the settlement of the negligence action. The claimants were the heirs and representatives of seventeen miners who were killed in a mine explosion while working as employees of a company which contracted with the Texas Gulf Sulphur Company. Workmen's compensation awards had theretofore been made to the heirs, and the damage suit was against third parties alleged to have negligently caused the accident.
 
 
 2
 Under the Utah statute, section 35-1-62, Utah Code Ann. (1953) such suits against a negligent third party are authorized, and if recovery is had its division between the employee and the compensation carrier is therein provided for. Under the statute only one suit is brought against a third party to include both the claim of the compensation carrier for reimbursement and the basic damage action of the claimant. The suit may be brought by the insurance carrier or by the claimant, and it is maintained only in the name of the party commencing it.
 
 
 3
 The plaintiff-appellees here are the attorneys who brought such a combined action and obtained an agreed-upon recovery. They here claim fees against The Travelers Insurance Company for services relating to the settlement which they assert benefitted it as the compensation carrier.
 
 
 4
 This case arose by reason of a change in interpretation of the above cited section of the statute by the Utah Supreme Court. In McConnell v. Commission of Finance, 13 Utah 2d 395, 375 P.2d 394, decided in 1962, the court held that the portion of the section relating to the division of the recovery obtained in such a suit against a third party did not permit the award by the court of attorneys' fees attributable to that part of the recovery going to the State Insurance Fund to reimburse it for compensation payments it had already made to the plaintiff. The decision was strictly one of statutory construction. The third party action from which the issue on this appeal arose was settled in November and December 1965. In April 1967 the Utah Supreme Court reversed the McConnell case and held that the correct construction of the Act (section 35-1-62, Utah Code Ann.1953) permitted reasonable attorneys' fees for plaintiffs' attorneys to be deducted from that portion of a recovery going to reimburse the State Insurance Fund. Based on this reversal in Worthen v. Shurtleff & Andrews, Inc., 19 Utah 2d 80, 426 P.2d 223, the plaintiff attorneys commenced this suit some eighteen months after the settlement of the third party action referred to above.
 
 
 5
 Both sides moved for summary judgment and the trial court granted judgment for the plaintiffs and computed the fees on the amount of the total compensation award for which the defendant was liable. The defendant insurance company has taken this appeal.
 
 
 6
 The appellant company asserts that the trial court was in error in granting summary judgment because there were issues of fact, and also because it included the unpaid portion of the award in addition to the paid portion in computing fees; but basically the appellant's position is that the change in law should not be applied retroactively, and that any award of fees must come from the recovery in the original third party action and not in a separate action such as this.
 
 
 7
 The appellee-attorneys assert that the award of fees was properly made to include the entire award, that the most recent Utah case should be applied retroactively, that the fees need not come out of the recovery, and that there were no fact issues.
 
 
 8
 Some detailed examination of the events which led to the settlement of the third party suit is necessary.
 
 
 9
 The record shows that as the trial was about to commence in the action brought by the claimants against Texas Gulf Sulphur and the United States, an offer of settlement from Texas Gulf Sulphur was outstanding. The offer was for the payment of the total sum of $1,200,000.00 to all the claimants. This amount would be divided among them on some basis agreeable to them and from the share of each claimant there would be deducted and paid to the workmen's compensation carrier the amount of compensation such claimant had theretofore received. It was also apparently assumed that the claimants would waive the right to any future compensation payments under the prior award and the carrier would thereby be released. Under the terms of this offer the amount to be received by all of the claimants would be reduced by the total compensation paid which ultimately was about $115,000.00.
 
 
 10
 On the day the trial in the action against Texas Gulf Sulphur was to start and in the court room, Mr. Delbert M. Draper, Jr., an attorney who represented one group of the claimants, spoke about settlement to Mr. C. Preston Allen, an attorney who was about to participate in the defense of the case. According to the testimony of Mr. Allen, Mr. Draper then said to him, 'Pres (Mr. Allen), wouldn't you even be willing to waive the comp?' A postponement of the commencement of the trial was then requested to allow time for consideration of this suggestion, and in about an hour a settlement agreement was reached. It would appear that such a remark would not have been directed to Mr. Allen had not Mr. Draper been aware that Mr. Allen could bring about such a waiver by the workmen's compensation carrier. It is apparent from the record also that Mr. Brigham Roberts, an attorney who represented other claimants, was aware of Mr. Allen's position. It appears that the word 'comp' as used by Mr. Draper was intended to mean a waiver by the carrier of the right to have returned to it out of the settlement amount the payments theretofore made to the claimants by the compensation carrier, The Travelers Insurance Company. Mr. Allen testified below that 'the substance of the settlement was identical with the statement that was made to me by Mr. Draper.' The record otherwise supports this statement. Thus the settlement agreed to was that the workmen's compensation carrier would waive recovery of the compensation payments theretofore made to the claimants under the Utah Act, and thus it would not participate in the $1,200,000.00 offer theretofore made by Texas Gulf Sulphur. Thereby the amount offered became the net amount claimants and their attorneys would receive.
 
 
 11
 The handwritten schedule used for the division of the settlement as prepared by Mr. Allen shortly after an agreement was reached shows the amount theretofore paid to each claimant as workmen's compensation and the amount of the $1,200,000.00 each claimant was to receive, the total being $1,312,429.00. It appears that an additional month's compensation became due and was paid before the settlement was completed and the return of this portion was also waived. This was the settlement agreed upon by the claimants, their attorneys who are the plaintiffs here, The Travelers Insurance Company, and the defendants in the negligence suit, and their insurers.
 
 
 12
 The settlement agreement was executed. Drafts provided by the Insurance Company of North America, which participated in the settlement as one of the insurers, were sent to Mr. Draper and Mr. Roberts; these with drafts by Texas Gulf Sulphur which were sent to Mr. Draper, payable to him and his clients, made up the $1,200,000.00. With the delivery of the general releases from the claimants the settlement was thus accomplished as agreed upon.
 
 
 13
 In addition to the execution of the settlement by delivery of the above drafts and releases, the record shows that at the same time The Travelers Indemnity Company sent a set of their drafts to Mr. Draper for his group of clients, and apparently also to the other attorneys. These drafts were for the amounts the claimants had each theretofore received as compensation, and were payable only to the claimants and to The Travelers Insurance Company to which they were to be forwarded after endorsement by the claimants. The drafts were so endorsed by the claimants and sent to the compensation carrier which received the proceeds thereon. These drafts were not part of the agreed settlement in the sense that they represented no change in the amounts each claimant was to receive. They were however a settlement between The Travelers Indemnity Company and The Travelers Insurance Company, each a wholly owned subsidiary of The Travelers Company.
 
 
 14
 To refer again to the origin of the settlement and the 'waiver' of the right of the workmen's compensation carrier to secure a return to it of the compensation payments, it is apparent that these waivers could have only been made in the negligence action by the consent and participation of the workmen's compensation carrier-- The Travelers Insurance Company. The interest of this carrier under the Utah Act was included in the suit by the claimants since only one action is brought to include damages and the return of the compensation. The workmen's compensation carrier thus obviously participated in the negotiations and settlement by agreeing to this waiver. It secured through this settlement the termination of its legal obligation to make to claimants future compensation payments under the award. Under the Utah law, the plaintiff-attorneys in the suit now before us were, in the principal action, seeking also to make a recovery for the workmen's compensation carrier of compensation it had paid and was obligated to pay in the future-- the balance of the total award of $203,716.00.
 
 
 15
 It is apparent that at the time of settlement it made no particular difference to the claimants where the money came from. The total amount of new money and the fact that none of that already received had to be returned to the compensation carrier were the principal considerations. It is clearly established that there was no conversation at the time about attorneys' fees although the settlement amount-- the recovery-- was then being divided and plaintiffs were participating for their principal clients.
 
 
 16
 As a result of the adjustment drafts between the indemnity company and the compensation insurance company which accompanied the settlement drafts, it is obvious that The Travelers Insurance Company received from its affiliated company the amount it had theretofore paid out as workmen's compensation, about $115,000.00. Also the claimants in the principal action executed general releases which covered the right to any future workmen's compensation payments. The Travelers Insurance Company thus was made whole, and the claimants and their attorneys received the entire $1,200,000.00 by the settlement and retained the compensation payments already received.
 
 
 17
 As indicated above the Insurance Company of North America (not a party here) made a contribution to the settlement. This was based upon an agreement among insurance carriers involved in the loss. This amount was one-third of the $1,200,000.00 settlement amount plus one-third of the compensation already paid. The plaintiffs attach considerable importance to the inclusion of the compensation paid when the carriers computed their respective shares. We have carefully considered it as a factor but do not find it of great significance.
 
 
 18
 The attorney-plaintiffs here arranged for the division of the $1,200,000.00, and for the retention of the compensation payments by their clients, the claimants, this retention needing no further action or division on the recipients' side, but the release by claimants of future payments under the compensation award did. On the other hand, the waiver of the return of the prior payments by the workmen's compensation carrier could have only been made by the insurance company which was presumably also represented in some respect by the plaintiffs. Thus there were cross waivers and releases between claimant-clients and a 'client' imposed by law.
 
 
 19
 This agreed division was of the entire 'recovery' obtained by the suit and was made with no request for, nor allowance for, nor express consideration of attorneys' fees as now claimed in this action.
 
 
 20
 The Utah statute, section 35-1-62, Utah Code Ann. (1953) provides three categories for the disbursement of recovery made under these circumstances. These were described by the Utah Supreme Court as 'priorities' in Worthen v. Shurtleff & Andrews, Inc., 19 Utah 2d 80, 426 P.2d 223. These priorities for disbursement are briefly, (1) for reasonable expenses of the action, including attorneys' fees; (2) to the person liable for compensation payments for reimbursement in full of all payments made; and (3) the balance to be paid to the injured employee, etc. It is apparent in the case before us that in the division and disbursement of the agreed settlement, the parties ignored the first priority provided in the statute. It was not discussed and no action was taken with reference to it. As to the second, it was met by the waiver by the carrier of return of compensation paid; and as to the third, the entire amount was divided among the claimants-- the heirs. Thus the parties chose by their agreement to handle the disbursement in a manner somewhat different than contemplated by the statute, and this they were entirely free to do since all agreed upon it. It is apparent also that following the agreed division, nothing was left of 'any recovery' as the term is used in the statute. The attorneys who were the plaintiffs in this action negotiated this division of the funds, and they and their clients all had a piece of it. It was an agreed settlement by the parties without proceeding to judgment, and it was also agreed upon by the several concerned non-parties.
 
 
 21
 The important key to the settlement, suggested by Mr. Draper, and which became the basis on which it was made, must be considered. This was the waiver of the return of compensation payments. This device, of course, resulted in a like increase in the amount the principal clients of plaintiffs would receive, and thus to them was equivalent in dollars to an increase in the amount of the Texas Gulf Sulphur offer, but it did not come about in that manner. The compensation carrier thereby gave up its legal right to be reimbursed out of the recovery. Since it was not simply an increase in the amount of money being paid by the defendant in settlement, it is one factor bearing on the consideration of the issues presented in this action. It is a factor because when it is considered in the absence of any discussion of attorneys' fees whatever, and considered with the unequivocal statement by the parties to this action that all the attorneys concerned understood the Utah law at the time to be as stated in McConnell v. Commission of Finance, 13 Utah 2d 395, 375 P.2d 394, it is apparent that the settlement was agreed to and executed in accordance with the law as therein stated and with no reimbursement to the insurance carrier provided for in it upon which a fee could be based. Mr. Allen testified that clearly it was his understanding of the Utah law at the time that the plaintiffs had no claim for attorneys' fees. The plaintiffs in their brief in this action state 'not only was this testimony of Mr. Allen's undisputed, but plaintiffs acknowledged that they had the same understanding of Utah law at the time of the settlement and that was why they did not then seek an attorney's fee.'
 
 
 22
 This is an action by skillful and experienced lawyers, not by laymen, and they were active participants in the voluntary settlements with full knowledge of the facts, and with not a presumed knowledge of the law, but actual knowledge. We must hold that they are bound by their settlements, and their complete dispersal of the recovery without asserting a claim for fees. The plaintiffs' extensive experience and knowledge in the negligence and compensation fields are well known. They acted in the best interests of their clients and secured a substantial settlement. It was not by trial and judgment, but by negotiation, incorporating agreement by all concerned parties and by others with an interest in the action including these plaintiffs. The fees here sought were thus not requested of and refused by the trial court, but instead the plaintiffs chose not to claim them nor to mention them. They relied on the prevailing rule of law which said they were not entitled to fees, and this reliance was again something of their own expert choosing.
 
 
 23
 In our opinion, if the facts of this case require it to be placed in a category for the application of doctrines relating to the retroactivity of judicial decisions, it is properly placed with those cases where reliance upon the overruled decision has been shown in the creation of rights and interests. Contracts were not entered into in the usual sense although the plaintiffs here describe the arrangement between claimants and Texas Gulf Sulphur Company as contractual, but the settlement arrangement considered broadly among all concerned more nearly approaches a contractual one or one creating or establishing rights and interests than anything else.
 
 
 24
 The trial court in granting summary judgment did not indicate the grounds upon which its decision was based. The motions by the parties also did not reveal the grounds they urged. However, some of the memoranda submitted to the trial court are in the record, as is a transcript of the preliminary discussions of the issues. These were all not of much assistance as an expression of the legal conclusions on which the judgment was based, but this is typical of summary judgments.
 
 
 25
 In considering the retroactive application of decisions which overrule previous holdings of the court on matters of statutory construction, it is apparent that the courts are reexamining the prevailing doctrines. Much has been written on this subject and upon constitutional construction. It appears that the courts are moving away from the application of rigid rules to a consideration of the issues of the particular case, and are thus evaluating the effect of retroactive application of the change brought about by the overruling decision and reaching a decision based thereon. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Myers v. Drozda, 180 Neb. 183, 141 N.W.2d 852.
 
 
 26
 Since this case was submitted there has been appealed to the Utah Supreme Court the case of Williams v. Utah State Department of Finance etc., 23 Utah 2d 438, 464 P.2d 596. We have withheld this opinion until the case, and its rehearing, was decided. The Utah Supreme Court stated that the contention there made was: 'That Worthen v. Shurtleff should not be applied retroactively so as to permit the plaintiffs here to recover part of their costs and attorneys' fees incident to their independent actions against third-party tortfeasors,' and the court said of this: 'We agree with this contention.' The court also said:
 
 
 27
 '* * * Under the particular circumstances of the instant cases, we see no reason to indulge the fiction that the McConnell case never really existed, and that therefore (without any logic) it was wasted effort, breath and paper. Since the construction of a statute in the light of existing judicial interpretation (the McConnell case) is the precise issue here, we think and hold that espousing such fiction here simply would amount to judicial legislation. To allay any fears as to the matter before us, our decision prospectively will be authoritative.'
 
 
 28
 We note the court's limitation to the 'circumstances of the instant case,' but consider that the 'circumstances' in the case before us are so similar that the same result must be reached. The court does not discuss the reason for denying application but in the case before us the well established exception to unlimited retroactive application is present. See: Crisco v. Murdock Acceptance Corp., 222 Ark. 127, 258 S.W.2d 551, interest rate on installment contracts; Bishop v. Bishop, 343 S.W.2d 587 (Ky.), rights in real estate-- reliance; Martin v. White Pine Copper Co., 378 Mich. 37, 142 N.W.2d 681, notification under workmen's compensation act; Springer v. Federated Church of Reno, 71 Nev. 177, 283 P.2d 1071, tort liability of charitable organization; Pollard v. Steffens, 161 Tex. 594, 343 S.W.2d 234, descent and distribution-- ownership of personal property. See generally Annot. 10 A.L.R.3d 1371. This is the 'reliance' described above on the specific case overruled.
 
 
 29
 The 'reliance' and 'contract' elements mentioned in the cited cases and in the texts are related or are descriptive of different aspects of the same basic facts. In the case before us we have described the 'reliance' by all concerned on the prior Utah decision, and have indicated that the settlement, although not perhaps strictly contractual as to the parties before us, is sufficiently similar to such an agreement that the reliance doctrine should be applied. When this is done, the settlement comes within the exception to a retroactive application of the Worthen case. Williams v. Utah State Department of Finance, supra. This leaves us with the law of McConnell and with the agreed settlement and division of the recovery-- the 'it' referred to in the statute (section 35-1-62, Utah Code Ann.1953).
 
 
 30
 With this reference to Worthen v. Shurtleff & Andrews, Inc., 19 Utah 2d 80, 426 P.2d 223, the attention given by the court in the construction of the statute to its reference to the 'recovery' and the disbursement of 'it' is of significance. The question is posed and answered with reference to a division or 'allocation' of this as a fund. There was a comparable handling of the issue in the McConnell case. A reasonable interpretation of the statute based upon the Utah decisions is also that the attorneys' fees are to come from the fund-- the 'recovery,' the 'it' referred to in the statute. Williams v. Utah State Department of Finance, supra.
 
 
 31
 Thus we hold that the trial court was in error in granting summary judgment for plaintiffs. The case is reversed with directions to enter summary judgment for the defendant.